MEARNS v. BALTIMORE & O. S. W. R. CO.

(Circuit Court of Appeals, Seventh Circuit. September 12, 1922. Rehearing Denied October 14, 1922.)

No. 3076.

1. Negligence ☞136(9)—Question for unless only one conclusion warranted.

To justify a directed verdict for defendant, the evidence must be such as to warrant no other conclusion than that the accident was not caused by defendant's negligence or that the person injured was guilty of negligence contributing to the accident.

2. Railroads ☞350(5)—Negligence as to automobile driver struck by backing cars held for jury.

In an action for the death of an automobile driver struck by a backing freight car which stood on the track when he approached it, whether the railroad company was negligent in not guarding the crossing and in giving a signal, or was relieved from so doing by the blocking of the street by the train, held for the jury.

3. Railroads ☞350(30)—Contributory negligence of automobile driver held for jury.

In an action for the death of an automobile driver struck by a backing freight car which stood on the track when he approached it, whether he was guilty of contributory negligence held for the jury.

Evan A. Evans, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern Division of the Eastern District of Illinois.

Action by Ella Mearns, administratrix of the estate of Charles Mearns, deceased, against the Baltimore & Ohio Southwestern Railroad Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The action was against defendant in error railroad company to recover damages for causing death of Charles Mearns. Declaration of three counts charged: (1) Company's negligent operation of train; (2) duty and failure of company to give signal or warning of the movement of its train across street; (3) failure of company to comply with statutory requirements to ring bell or sound whistle before its train crossed public highway.

Deceased was a farmer, who had for about seven years also operated a threshing machine during threshing season, a man of about 48, active in business and in good health. October 4, 1920, he was threshing, and between 6:30 and 7 p. m., after his day's work, was returning home driving his Ford auto truck through the city of Flora, Ill. (a place of about 3,000 people), and as he was crossing the company's railroad track there the auto was struck by a box car moving along the track, causing his death.

The company's main track runs east and west through the city. It is crossed by a north and south branch track of same company, and just east and north of the intersection is the depot. Nearly a block west of the depot is a much-traveled north and south street, one of the principal streets of the city. This street is crossed by the east and west main track, and by a long parrallel passing track just south of it, and a little farther south by a Y track, which connects the branch track at a point 200 or 300 feet south of the depot, with the passing track at a point about 100 feet west of the street; the curve of the Y track being toward the depot. In the traveled or middle part of the street there are the usual plank crossings over the tracks, being from 15 to 18 feet lengthwise of the tracks, and extending one plank outwardly from each track. The track in the street east and west of the plank crossings was gravel-ballasted in the usual way.

Mearns was driving the truck, one of his men sitting on the seat with him, and his three other employees on a box back of the seat. As he approached the tracks from the south a long freight train was crossing the street, moving west on the middle or passing track, and he stopped 15 or 20 feet south of the Y track. At the same time there was upon the Y track a cut of 15 to 18 box cars, occupying the entire Y track east of the street, and extending a considerable distance south on the branch track, which cars had been run on the Y track from the passing track in order to permit the freight train to move along the latter. The westerly box car on the Y track extended west on the street, and partly across the planking. When the freight had passed Mearns started to drive across the Y track, and while on it the cars started west striking the truck before it got across.

One of the sharply controverted questions was whether the west car on the Y track extended so far across the planking as practically to block the crossing to normal and usual travel. The four men with Mearns testified positively that the west 8 or 10 feet of the plank crossing was unobstructed, and that, in driving upon the track after the freight had passed, Mearns went straight along in the same course in which he had approached the track, without turning west to avoid the car, and that the truck came within about 2 feet of the end of the car and about 3 feet from the end of the plank, not leaving the plank until forced by the moving car. Another witness, who crossed from the north just before the freight train came along, testified that he crossed the passing track just before the freight reached the crossing, stopped to see if he could cross the Y track, saw no engine attached to the cars, and testified that there was 10 feet or a little less of clear planking, and that he thereupon crossed without difficulty on the plank, going to his home on the same street a few hundred feet south of the tracks. Five of defendant's employees testified to having examined the place right after the accident, and that from the tire tread marks on the road leading to the crossing the west wheels of the truck as they went toward and upon the track must have been 2 or 3 feet west of the planks. A switchman testified that there was not enough of the plank crossing unobstructed to permit the passage of an automobile thereon. Another of the company's employees (Pope), who, with his wife, was sitting in an automobile waiting to cross the same tracks from the south when deceased drove up and stopped a little to his left, testified (and also his wife) that there was not enough of the crossing unobstructed to permit an automobile to pass on it, and that when Mearns started to cross he swerved sharp-

ly to the west in order to get around the end of the car. He testified in effect that, if there had been sufficient room on the planking, he also would have undertaken to cross.

It was dark, but there was an electric light on the crossing just east of the road which lighted up the immediate vicinity. A switchman with a lantern was near the west end of these cars, and said he was there to protect that end of the train; that he stayed there on the street until about the time the freight passed, and then went west to set a switch so that the cars on the Y track might run back on to the passing track. He gave no signal to move the cars, but when the switch was turned the yard foreman, who was south of the curve and somewhere near the middle of the cut of cars, and in view of the west switch, gave a signal, and an engine attached to the other end of the cut started to back up the cars. The foreman was standing about 200 feet from the crossing, but could see it, and saw the switchman leave the end of the cars and go west, also saw the machine waiting to cross, and gave a violent stop signal when he saw that Mearns was driving on the tracks. No one was guarding the west end of the train when it started to move. The foreman said he had the crossing pretty well blocked.

The four employees of Mearns, the switchman, the Popes, and the foreman all testified that they heard no bell or other signal. Pope and the foreman said they were too far from the engine to hear it; all said the engine of the truck was not shut off and made the usual noise of such an engine. The engineer and fireman and another switchman near the engine testified that the bell of the engine began to ring just when it started to back, and kept ringing. No other notice of the movement of the cars was given, and no other means taken to protect the crossing than as indicated. Pope testified that he saw the switchman guarding the crossing, and that he was justified in leaving it unguarded and going to the switch because the crossing was blocked by the car on it.

The man on the seat with Mearns testified he told Mearns not to cross, and that, if he attempted it, he, the witness, would not remain on the truck; that Mearns said he could cross all right, as there was no engine attached to the cars, and evidently he convinced this witness, who remained on the seat up to the time of the collision. Pope said the engine was not on the Y track, and he did not see it. The Popes testified that he shouted a warning to Mearns. From the evidence it may be concluded this did not occur until the truck was on the track and the cars had started to move west, too late to be of any avail.

At the close of plaintiff's evidence the court denied a motion to take the case from the jury, and at the close of all the evidence a similar motion was made by defendant and granted, a directed verdict given accordingly, and judgment for defendant rendered thereon.

June C. Smith, of Centralia, Ill., for plaintiff in error.
Bruce A. Campbell, of East St. Louis, Ill., for defendant in error.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above).

[1] To justify the directed verdict the evidence must be such as to warrant no other conclusion than that (1) the accident was not caused by negligence of the company, or (2) negligence of the deceased contributed to the accident. Do the facts necessarily establish one or the other of these propositions?

In the first is involved the questions: Did the company properly guard the crossing at the time of the accident? Ought the company to have given a signal of the intended starting of the train, and, if so, was a signal given, and, if given, was it under the circumstances shown to have been reasonably proper? Was the traveled part of the street so blocked by the train as to relieve the company of any duty of guarding the crossing or giving a signal before starting the train?

The second raises the queries: Did deceased know or ought he to have known the danger to himself in attempting to cross? Was he warned of the danger of attempting to drive across, and was the warning such as ought to have deterred a reasonably prudent man from crossing the track? Was the street at the crossing so obstructed by the train that a reasonably prudent man would not then have undertaken to cross? Did deceased before driving on the track take such precautions to avoid accident as, under like circumstances, a reasonably prudent person would have taken?

[2, 3] Bearing on all these questions there appears a conflict of evidence, and as to none of them can it be said there was no evidence tending to support the cause of action.

We therefore conclude it was error to direct the verdict, and the judgment is accordingly reversed, and the cause remanded for another trial.

EVAN A. EVANS, Circuit Judge (dissenting). The evidence in this case bearing on the issue of contributory negligence is such that I cannot subscribe to an order reversing the judgment entered in the court below. Deceased's own neglect, resulting in his untimely death, is so thoroughly established that there was nothing for the trial judge to do but to take the case from the jury.

In his haste to get home, deceased ignored the warning of his passenger, and of his threat to jump from the car if the attempt to cross the tracks was carried out, ignored the warning given by the driver in the other waiting automobile, ignored the warning which the long line of standing cars sounded, the last one of which extended halfway across the street and more than halfway across the planks over which the automobiles ordinarily traveled, and, without ascertaining whether a switching operation was in process, drove his car on the tracks within a few feet—in fact within a few inches—of the end of the last car, and there met the bump and the disaster which was inevitable if the cars moved at all.

Upon such a record the issue of contributory negligence was one of law for the court to determine.