## PENNSYLVANIA R. CO. v. MOFFITT.

(Circuit Court of Appeals, Seventh Circuit. July 24, 1924. Rehearing Denied September 19, 1924.)

### No. 3377.

1. **Railroads** ⊙═312(13) — **Extraordinary care required in operating trains at dangerous crossings.**

While the maintenance of a tower near the tracks, beside a much-used highway crossing, which, with trees along the sides of a cut, obstructed the view in one direction, and sound from approaching trains rendered the crossing an extraordinarily dangerous one, may not have been negligence, it imposed on the railroad company the duty of exercising unusual care in the operation of its trains at such crossing.

2. **Railroads** ⊙═350(9)—**Negligence at crossing held for jury.**

Plaintiff's intestate, with others riding in an automobile, was killed at a highly dangerous railroad crossing by defendant's train, which was late and with two engines was running at a speed of 60 to 70 miles an hour. The evidence was conflicting as to whether even the usual signals by bell and whistle were given, and it was not claimed that any extraordinary precautions were taken on approaching the crossing at such unusual speed. *Held,* that the question of defendant's negligence was for the jury.

3. Railroads ⊝⟶350(22) — Contributory negligence of automobile driver held for jury.

Driver of automobile *held* not chargeable with contributory negligence as matter of law, where view of train approaching at speed of 60 or 70 miles an hour was obstructed, he approached until near the crossing slowly, there was no evidence that he did not look and listen, and the evidence was conflicting as to whether an automatic signal was ringing.

In Error to the District Court of the United States for the Eastern District of Illinois.

Action at law by Alta Moffitt, administratrix of the estate of Raymond C. Tomlinson, deceased, against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The judgment under review was on an action against plaintiff in error railroad company for causing the death of Tomlinson. The evidence shows, or tends to show, that deceased, a young man in good health, was driving a Ford automobile in which there were eight others, five of them small children, along a highway, and on crossing the company's railroad track July 29, 1923, about 4 p. m., a train struck the automobile, killing all in it. It occurred at Liggett, a small station in Indiana, between Paris, Ill., and Terre Haute, Ind., 2 or 3 miles from the latter. The automobile belonged to deceased, whose home was in Danville, Ill., to which place he was returning. At Liggett there is an east and west main track, and north of it a parallel side track. The train was a fast passenger from St. Louis, eastbound, 13 cars, 2 engines, nearly an hour late, moving, as the engineers testified, a mile a minute, and some of the plaintiff's witnesses 70 miles an hour. One living adjacent to the right of way saying it was the fastest moving train she had ever seen. There was the negative evidence of witnesses tending to show that no signal whistle or bell was sounded, and other evidence to the effect that both were sounded. The highway, very much traveled, winds irregularly, crossing this same track about 500 feet east of the Liggett crossing, and to the south and west, turning north and westerly, crossing at Liggett in a northwesterly direction. About 30 feet west of the traveled road, and 9 or 10 feet south of the south rail of the main track, is an inclosed frame building, about 16 feet square and 30 feet high, used as a block tower and telegraph office. Just north of the tower is a semaphore post, and west of it, 10 or 15 feet from the highway, is a structure having an alarm bell, designed to ring automatically when trains reach a point about 2,000 feet either way, and to continue ringing until the train has passed the crossing. Near by there is also a flagstaff. Just north of the tracks and east of the highway is a conspicuous railroad sign. There is also a railroad warning sign on the northeasterly side of the highway, 100 feet or more southeasterly of the south track.

Westerly from the tower the tracks lie in a considerable cut for several hundred feet to the west. The embankments are covered with trees and vegetation, and south of the tower, on an adjoining farm, there are trees coming up to the tower and a farmhouse close by, so that to one driving northeasterly toward Liggett crossing it would be impossible to see a train approaching from the west until an automobile was very close to the south rail—some witnesses say within about 7 feet, and others considerably more. It was testified that the conditions referred to interfered with hearing a train approaching from the west by travelers on the highway coming toward the crossing from the south. There was evidence that one coming toward the track from the south, when within 7 to 10 feet from the south rail, could see a train approaching from the west at a distance of half a mile or more, although a few hundred feet west of the tower there is a considerable curve or pocket in the track, but curving back again, so one can see the approaching train beyond the pocket. Other witnesses testified that at a distance of 17 feet or so an approaching train from a very considerable distance, a mile or more, west would be observable. The evidence that the alarm bell was ringing is disputed. For about 50 feet of the highway, approaching the crossing from the south, there was an upgrade of 3 feet, and just north of the track the grade continued to rise. It was testified that from the south plank of the crossing there was a drop of 4 inches to the level of the highway where it was worn away. The company's telegraph operator in the tower testified he saw the approaching automobile when it was about 75 feet from the crossing, and that it was traveling 7 or 8 miles an hour, and that the man who was driving it was looking in the direction of the tower, which would be toward the west. The engineer of the front engine testified it was a woman that was driving; that the car was moving about 20 miles an hour when, on his engine, then about 100 feet from the crossing, he first saw the car about 20 feet from the track.

The first count of the declaration charges that, by reason of the physical obstructions, seeing and hearing the approaching of trains from the south was prevented, and the crossing was extrahazardous, and that the train was carelessly run across the highway at a dangerous rate of speed. The second charges failure to blow the whistle or ring the bell in approaching the crossing. The third charges negligence and improper management in the running of the train; the fourth, negligently permitting the tracks to the west of the highway crossing to be obstructed from the view of persons approaching same from the south on the highway. An additional count sets up a violation of the statute of Indiana which requires railroads to restore roads and highways across which they build, so as not to interfere with a free use of the road, and to afford security for life and property, alleging the careless construction and maintenance of the crossing, whereby the automobile was retarded and impeded in its undertaking to cross the tracks, causing it to be struck by the train.

Walter J. Gunn, of Danville, Ill., for plaintiff in error.

Thos. A. Graham and Chas. Troup, both of Danville, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). The salient contentions for reversal of the judgment are that the evidence fails to show negligence on the part of the company and that from all the evidence contributory negligence in driving the automobile affirmatively appears.

[1] That this was a crossing highly and extraordinarily dangerous to travelers approaching it from the south must be conceded, and of course no one knew this better than the company itself. The location of its block tower involves an engineering question, which it was the company's right and duty to solve, and while it may not have been negligence on its part to place and maintain it there, nor indeed to leave the embankment so that it will tend to obstruct view and sound of approaching trains, yet under these conditions of hazard it must manage its trains with some view of minimizing the special danger there to the traveling public.

[2] It is charged that the statutory whistle and bell signals were not given. There was evidence tending to show they were not. Perhaps, had we been triers of the facts, our conclusion would have been that the evidence showed they were given. But do not the circumstances suggest something more than complying with the statutory requirement? Here was a belated train, drawn by two locomotives, approaching a place of extraordinary danger at a speed which a mature witness residing next to the right of way characterized as the swiftest she had ever seen, with full knowledge on the company's part that the train would be at the danger point more quickly than ordinarily, and it might have been considered negligent management of the train not to give a signal further back than the statutory 80 rods, or not to make it so loud and prolonged that the sound would be more likely to be heard; and under these circumstances, with these two locomotives supplying the power propelling this long train at such speed, it might well have been regarded as a requirement of ordinary care that on approaching this point of extraordinary hazard the whistles of both locomotives be sounded continuously until this place was reached, and failure to do so might by the jury have been regarded as negligent running and management of the train under the indicated circumstances.

The right generally to run through the country at such a rate of speed as the company sees fit may be conceded. At the same time extraordinary circumstances may be readily conceived under which it would be negligence to run at high speed, or even to move at all. We are satisfied that there was sufficient evidence bearing upon the negligence of the company, so that it could not be concluded as a matter of law that no negligence on its part appears.

[3] Does contributory negligence of the deceased affirmatively and necessarily appear from this record, thereby requiring a directed verdict for plaintiff in error? We will assume that deceased was driving the car, which was his own. His relatives and friends were with him. He was in good health, in the possession of his faculties, was profitably employed, and there is nothing to indicate any motive for the destruction of himself and those with him, or any purpose with reference to this crossing except to pass it in safety. But even the strongest, wisest, and best-intentioned may encounter danger which ordinary care and prudence would require him to avoid, and thereby defeat recovery for ensuing injury.

That he was approaching a railroad crossing he must be held to have known. He was not resident in these parts, and was home-

ward bound, with apparently every normal incentive for safely negotiating the journey. Only a few moments before he had crossed the same track some 100 feet east, and evidently there saw nothing to indicate the danger which in a few moments he would encounter. Up to about 70 feet from the crossing he was evidently in no undue haste, as the telegraph operator says he was then moving along at the rate of 7 or 8 miles an hour, and did not appear oblivious to his approach of a railroad crossing, as he was looking toward the tower, which was also in a westerly direction. The telegraph operator, whose business it was in part to take note of these trains, says he heard no sound of its approach, and it is not unreasonable to believe that no such sound obtruded itself upon the ears of deceased, however he may have been listening. If, as there was some evidence to indicate, the crossing bell was not ringing, its very silent presence might tend to give assurance that no train was in fact approaching within the distance at which ordinarily such bells begin to sound their warning; and, while the nonringing of the crossing bell is not charged as negligence, the fact of its silence may be considered with other facts on the question whether deceased, approaching this track, was chargeable with negligence in assuming he could safely cross.

Under the testimony of some of the witnesses, if he had stopped near enough the south track to enable him to see clearly to the west, the front of his automobile would have been uncomfortably close to the danger line from the overhang of any passing train. There was an upgrade leading to the south track, and again leading from the north track, and if he increased his speed somewhat, in the absence of knowledge of an approaching train, it would likely have been for the purpose of getting up the grade and over the bump on the edge of the crossing plank, as was testified to. We cannot see that in so going over the track as he did under these unusual circumstances, it can be said he did not act as an ordinarily prudent person might have acted in a similar situation. We are of the view that the fact of contributory negligence or the want of it was under all the facts in the case fairly a question to be determined by the jury.

The cases of Lamely v. B. & O. S. W. Ry. Co. (C. C. A.) 298 Fed. 916, decided February 23, 1924, and Mearns v. B. & O. S. W. Ry. Co. (C. C. A.) 284 Fed. 31, which counsel for plaintiff in error stress, are materially different in their facts, as perusal of them will show, and what we said in those cases

we consider in no way conflicting with the conclusion here reached. No other question is presented which we deem it necessary to discuss, and the judgment of the District Court is affirmed.