## Lena Geist v. Missouri Pacific Railway Company.

Filed June 19, 1901.   No. 10,062.

Commissioner's opinion, Department No. 3.

1. **Personal Injury:** Contributory Negligence: Instruction. The plaintiff, a child of six years, in crossing the defendant's tracks on Nicholas street, in the city of Omaha, was run over by an engine operated by the defendant and one of her legs was cut off above the ankle. The court instructed the jury as follows: "If, in this case, you find from the evidence that Lena Geist was of sufficient age, intelligence and experience to know and realize the danger of being where she was, and of attempting to cross in front of an approaching train, then she would be chargeable with contributory negligence." The evidence was undisputed that the track over which the engine approached the crossing was obstructed from the plaintiff's view by the box cars standing on another track, and the plaintiff's evidence tended to show that no bell or whistle was sounded, or other signal given, and that the plaintiff did not know of the approach of the engine until she had reached the middle of the track where the accident occurred. *Held*, That the instruction was erroneous, in that it excluded from the consideration of the jury all evidence that the plaintiff was without fault in attempting to cross the track, and that she was lured into her dangerous position by the negligence of the defendant in failing to give any warning by bell, whistle or otherwise that the engine was approaching the street crossing, and that her view of the approaching engine was obstructed by the box cars.

2. ——: ——: ——. The defendant's evidence tended to show that when the plaintiff discovered the engine, she had not yet reached the track of the defendant where the accident occurred, and that if she had remained in the position she occupied, she would not have been injured. On this phase of the case the court instructed as follows: "In this case, if you find from the evidence that Lena Geist knew of the approach of this engine in time to avoid a collision, and at the time she obtained this knowledge she was in a position of safety if she had remained there, then it is immaterial whether warnings or signals of the approach of the train were given or not." *Held*, Error, as it excluded from the consideration of the jury the question of whether she occupied a position of apparent danger when she first discovered the engine, and that it required her to remain in a position of apparent danger, if such was the case, regardless of what persons of her age, intelligence and experience would ordinarily do under the same circumstances.

3. ——: ——: ——. The court refused an instruction asked by the plaintiff, to the effect that if the jury found that no signal was given, and that, under all the circumstances of the case, it was negligence in the defendant to run its engine onto the crossing at Nicholas street without signaling its approach by bell or whistle, and that such negligence was the proximate cause of the injury, and that the plaintiff was damaged thereby, then she should recover, unless they further found that by her own negligence she contributed to the injury. *Held*, A proper instruction, and error to refuse it.

Error from the district court for Douglas county. Tried below before Fawcett, J. *Reversed.*

*T. J. Mahoney*, for plaintiff in error.

*John F. Stout, James W. Orr* and *Bailey P. Waggener*, contra.

Duffie, C.

This case was before the court, under the title of *Missouri Pacific Railway Company v. Lena Geist,* at the September, 1896, term, the former opinion being found in 49 Nebr., 489. On a second trial judgment was for the defendant, and the case is now brought here by the plaintiff, and we are asked to review certain instructions given by the trial court and other instructions asked by the plaintiff and refused. The issues made by the pleadings are fully set out in the former opinion; but a statement of the facts which the evidence tends to establish is necessary to an understanding of the objections made to the instructions given, and to the exceptions taken to the refusal of the court to give those requested by the plaintiff. The brief of the defendant contains a complete statement of the facts, which it claims is established by the testimony given on the trial, and as this statement contains a fair deduction of the facts to be drawn from the evidence, we copy it into this opinion, remarking, however, that as to one or two of the points about which there was conflicting testimony we will hereafter call attention to the evidence.

"Nicholas street, in the City of Omaha, runs east and west, and the tracks of the Missouri Pacific cross this street, running north and south between Fourteenth and Fifteenth streets. On the day of the accident complained of, about 3 o'clock in the afternoon, Lena Geist, in company with four other girls, was returning home from school, going east on Nicholas street. It seems one of the girls, Bessie Hilkner, was slightly in advance of the other four when they arrived at the point where Nicholas street crosses the Missouri Pacific tracks. The four other girls were going along, as children will, having hold of each others' hands, Lena Geist being furthest north, and as some of the witnesses say, were running along. Nicholas street, where it crosses the tracks of the railroad company is planked in the centre about thirty-two feet in width. There was no sidewalk on this street across the tracks, but foot-travelers would leave the sidewalk when going east on arriving at the most westerly track and bear off to the centre of the street and cross the tracks on the planking. The defendant company at that time had about six tracks crossing this street, the most westerly of which was called the 'house track,' the next track east (and which was about twenty-five or thirty feet east) of 'house track' was called 'Green's track' and the third track from the west was called the 'West side track,' and was located perhaps six to eight feet east of 'Green's track.' At the time of the accident, there were several, perhaps five or six, box cars standing on 'Green's track,' south of Nicholas street, the most northerly of which cars came up about flush with the south side of the planking; the cars were set close together, but it does not appear whether they were coupled to each other or not. A few moments before the accident occurred switch engine No. 296 was backed south across Nicholas street to a point about eighty feet south of the south line of the street and stopped, where it remained stationary for a few moments while the foreman received orders from the yardmaster, and after receiving his orders (his engine being headed north) he signalled

the engineer to move northward on this third track from the west, the purpose being to go to the north part of the yard in the discharge of some duty. The uncontradicted evidence is that before starting northward, the engine bell was rung for the purpose of notifying two of the crew that the engine was about to start, and as the engine moved forward at a rate of speed of three or four miles an hour, on the east side of this string of box cars, the engineer being in his proper place, was on the right or east side of the engine, the fireman on the left or west side. The engineer's position was such as to prevent his seeing any one coming from the west on Nicholas street, and for that reason the fireman kept a lookout from his side, and when within about twenty-five or thirty feet of the south side of the crossing of Nicholas street, the fireman saw the girl (Bessie Hilkner) crossing the track upon which the engine was moving, she going east, and signalled the engineer to stop or slow-up which he did, and after the little girl was seen by the engineer, having crossed the track, the engineer started forward again at about two miles an hour when the remaining four of the party of girls came up to the track, going east, and as has been said, Lena Geist was furthest north and consequently furthest from the engine, it coming from the south. She was perhaps, slightly in advance of the other three, but all had hold of hands. It seems when they first saw the engine, according to the testimony of plaintiff's witnesses, the one nearest the engine, May Aylesbury, was thirteen feet from the engine and about six feet west of the track upon which it was moving, and Lena Geist was still further north. Lena Geist attempted to run across the track in front of this approaching engine and pull the other girls with her, and they attempted to prevent her doing so when she either let go of the hand holding her or the hand-hold was broken, and she either ran or fell in front of the approaching engine, the wheels of the engine passing over her left foot cutting it off above the ankle. She was taken out from under the locomotive at about the

place where the tank or the tender is coupled to the engine, and was about six or eight feet south of the north side of the planking, and on the planking.

"The engineer did not see Lena Geist until after he had stopped his engine, and was not in a position where he could have seen her. Indeed it is admitted in the record that 'The plaintiff announces to the court for the second time, that she makes no claim of negligence against the defendant for failure to discover the perilous situation of the plaintiff, or for failure to do anything to prevent the accident after the defendant's employees did discover her situation.'

"John Swift, the crossing watchman seeing these four girls approaching when he was about forty or fifty feet east of them, started towards them running, shaking his flag and attempting to stop them from going on the track upon which the engine was moving, and the engineer seeing the flagman making these gestures, concluded something was wrong, and without knowing what it was, stopped his engine,. as he says, in the distance of five or six feet, and then discovered the accident had occurred."

The evidence for the plaintiff tends to establish the following as the circumstances under which the accident occurred: The plaintiff with three companions but little older than herself were returning home from school, going east on Nicholas street. Their view of the railroad track south of the Nicholas street crossing was obstructed by a number of box cars standing on one of the tracks west of the track on which the accident occurred. The engine in question approached the crossing from the south. The four little girls were walking side by side, holding each other by the hand, the plaintiff being farthest north and slightly in advance of her companions. When the engine was first discovered, the plaintiff was between the rails of the track over which the engine was passing, and her companions just outside the west rail of said track. The engine was at the time close to them. Under the testimony, the jury could well have found the facts as above

stated; or, on the other hand, there was evidence which would support a finding by the jury that the facts were as given above in the statement taken from the defendant's brief.

In this condition of the case we proceed first to examine the instructions given by the court and excepted to by the plaintiff. The 18th, 23d and 24th instructions of the court are as follows:

"18. The jury are instructed that persons of immature or tender years are not necessarily exempt from the charge of contributory negligence; and while as a rule infants are not chargeable to the same degree as adults are with acts of negligence contributing to an injury, yet every person is held, of any age, chargeable with that degree of precaution for their own protection that their intelligence, experience and discretion enables them to exercise; and if in this case you find from the evidence that Lena Geist was of sufficient age, intelligence and experience to know and realize the danger of being where she was, and of attempting to cross in front of an approaching train, then she would be chargeable with contributory negligence, if under the evidence and instructions you find that the plaintiff was negligent."

"23. The jury are instructed that while persons of immature years and infants are not held to the same degree of care for their own protection as adults are, yet they are held to the exercise of that degree of care and prudence for their own safety that their knowledge, experience and intelligence teaches them they should exercise; and in this case if you find that Lena Geist was of sufficient age and intelligence to know and appreciate the danger of attempting to cross in front of a moving locomotive, and that she made such attempt, and that she was injured while making such attempt, then she can not recover in this action and your verdict must be for the defendant."

"24. The jury are instructed that signals of warning of the approach of a train, and the service of flagmen or crossing watchmen are for the purpose of warning persons.

who are about to cross the tracks of the railroad company that a train or an engine is approaching and that it is dangerous for such person to proceed further or go upon the track where such engine or train is moving, but if such person is aware of the approach of such train and at the time she became aware of it she is in a position of safety, then it is immaterial whether such warnings are given or not. In this case if you find from the evidence that Lena Geist knew of the approach of this engine in time to avoid a collision and at the time she obtained this knowledge she was in a position of safety if she had remained there, then it is immaterial whether warnings or signals of the approach of the train were given or not."

One of the objections made to these instructions is that they completely eliminate and take from the jury the question of whether Lena Geist was in a position of apparent danger when she first discovered the engine, and whether she was induced to place herself there by the negligence of the defendant in failing to ring the bell or sound the whistle of the engine or to take other precautions which ordinary prudence would suggest to warn persons about to cross its tracks that an engine was approaching. The law is well settled that one who is placed in a position of apparent danger by the negligent act of another is not guilty of contributory negligence in an attempt to escape the apparent impending peril, though he does not use the same judgment and discretion in making the attempt that one of ordinary prudence and judgment would exercise under other circumstances. The question in such a case is not what a prudent man would do under ordinary circumstances, for the suddenness of the emergency and the excitement of the influence of terror must be taken into account. This is the rule even in case of adults, who are chargeable with a higher degree of diligence and prudence than a child of the age of six years. Beach, Contributory Negligence, 44, and cases cited. This court, in *St. Joseph & G. I. R. Co. v. Hedge,* 44 Nebr., 448, has said: "6: Independent of the statutory rule, a passenger who is

placed in a position of apparent imminent peril through the negligence of a carrier may recover for injuries received while endeavoring to escape in obedience to the natural instinct of self-preservation, provided he exercise ordinary prudence in view of the circumstances, as they appear to him at the time. 7. And such is the rule, although it subsequently appear that the danger was apparent only, and not real, since the carrier, whose negligence is the proximate cause of the injury, can not complain on the ground that passengers err in their estimate of the danger confronting them or the choice of means to insure their safety."

The circumstances under which the injury occurred to the plaintiff were related by Louisa Benson, the oldest of the four school children who were together at the time. She states that she had to cross the tracks of the company on her way to and from school; that there were about a dozen tracks crossing Nicholas street; that there was no sidewalk along the street where it was crossed by the railroad tracks, but the street itself was planked for wagons and people to cross on; that the children were dismissed from school about 3 o'clock on the day of the accident and were going home; that when they came near the tracks and to the end of the sidewalk, they went into the street, and were walking east on the planking and near the south part thereof when they first saw the engine. From this point her evidence continues as follows:

Q. Did you see any engine coming along there while you were going east?

A. Yes, sir.

Q. Where were you and the other girls when you first saw the engine?

A. We was right near the track.

Q. How close was your sister Anna to the track?

A. She was right pretty near on it.

Q. Pretty near on the track?

A. Yes, sir.

Q. Did you have hold of hands?

A. I don't think so.

Q. Where was Lena Geist at the time you saw the engine?

A. She was on the middle of the track.

Q. And where was May Aylesbury?

A. She was on the other side of Lena.

Q. On the other side of Lena?

A. Yes, sir.

Q. Do you know whether May and Lena had hold of hands?

A. Yes, sir.

Q. They had hold of hands?

A. Yes, sir.

Q. Where was May with reference to the track?

A. Why, she was about two steps away from it.

Q. And Lena was between the rails?

A. Yes, sir.

Q. How close was the engine to Lena when you first saw it?

A. About fifteen feet.

Q. When you first saw the engine it was about fifteen feet from Lena?

A. Yes, sir.

Q. And at that time Lena was between the rails?

A. Yes, sir.

Q. Which way was Lena going at that time?

A. She was going across the street.

Q. That is east or west?

A. East.

Q. Which way were you going?

A. I was going east.

Q. You were going east also?

A. Yes, sir.

Q. Which way was Anna going?

A. She was going with Lena.

Q. Your little sister?

A. Yes, sir.

Q. Which way was May going?

A. She was going with them.

Q. Which direction was the engine going?

A. North.

Q. Would that be towards the little girls or away from them?

A. Towards them.

Q. Now, up to the time that you saw them in that position was there any bell sounded by that engine?

A. No, sir.

Q. Was there any whistle sounded.

A. No, sir.

Q. Was there any flagman or person there watching that crossing at that time?

A. No, sir.

Q. Did you know anything about the engine coming until Lena got on the track and your sister up against the track?

A. No, sir.

Q. How was the engine going?

A. It was going fast.

Q. Do you know whether it had any cars attached to it?

A. No, sir.

Q. Do you mean that you do not know or that it did not have any?

A. It didn't have any.

Q. Then, what did you do when you saw the engine in that position and the other girls in that position?

A. I told them to get off of the track.

Q. What else did you do?

A. Began to holler.

Q. And what else did you do?

A. When Lena was knocked down and my sister was knocked down I pulled my sister off of the track.

Q. When Lena was knocked down your sister was knocked down?

A. Yes, sir.

Q. Where did your sister fall when she was knocked down?

A. She fell on the track.

Q. That is, on the rails or between the rails?

A. I don't just remember.

Q. What did you do with your sister?

A. I took her off the track.

Q. Do you know what part of the engine struck your sister?

A. The front part.

Q. And what became of Lena when she was knocked down?

A. She got under the engine, I thought it was.

Q. How far did the engine go before it stopped?

A. It ran across the street.

Q. To which side of the planking?

A. The north side.

It will be seen from the foregoing that the jury might have found that the plaintiff, at the time she discovered the engine, was on or about the centre of the track over which the engine was approaching. Certainly there was evidence to show that she was already crossing the track before she knew of the approach of the engine, and that she got into this dangerous position through the neglect of those in charge of it to give any warning. If such was the case, then she was not negligent in getting into the dangerous position in which these witnesses place her; but the court ignores this testimony in its 18th instruction and charges the jury that if "you find from the evidence that Lena Geist was of sufficient age, intelligence and experience to know and realize the danger of being where she was and of attempting to cross in front of an approaching train, then she would be chargeable with contributory negligence, if under the evidence and instructions you find that plaintiff was negligent." We have been at some loss to determine just what construction to put upon the last phrase of this instruction and we doubt whether it expresses the true meaning of the court. Our best judgment leads us to believe that the court used the word "plaintiff" where "defendant" was intended, and this construction is

supported by the fact that this is the first instruction in which the court calls the attention of the jury to matters that would constitute contributory negligence on the part of the plaintiff. In the preceding instruction the court called attention to facts in the case which would or would not make the defendant negligent, and had told the jury that in the absence of negligence on its part the plaintiff could not recover. In these prior instructions it had been stated in a general way that the plaintiff could not recover even on a showing that the defendant had been negligent, provided her own negligence had contributed to the injury, and the 18th instruction took up matters which the jury were told would constitute contributory negligence on her part and prevent a recovery even though under the evidence and instructions the jury believed that the "plaintiff" (meaning defendant) was guilty of negligence. Can this instruction be supported as a correct rule of law to govern in such cases? We are speaking of it now under the well understood rule that each party has a right to have the case presented to the jury upon his own theory, provided there be sufficient evidence to support that theory. There was evidence, as we have seen, sufficient to support a finding that the plaintiff without any warning from the defendant reached the centre of the track before discovering that she was in any danger from the passing engine; that this was a dangerous position all will concede, that it was dangerous "to attempt to cross in front of an approaching train" is not a question for dispute, but to say that she was chargeable with contributory negligence because of this situation, is to wholly ignore the evidence tending to show that she walked to the centre of the track and attempted to cross in front of the approaching train, because of the defendant's failure to give her warning of the danger of the attempt, and because that danger was not visible to her, in consequence of the box cars left by the defendant in such a position as to shut off her view of the approaching engine. Under this instruction the plaintiff might have been exercising the highest

possible degree of care up to the time she found herself between the rails, and though she may have gone as far as she did in consequence of the defendant's negligence, still she is guilty of contributory negligence, and this, in the words of the plaintiff's brief, "not because of anything she did, or omitted to do, but because she may have been old enough to know that it is dangerous to dispute the right of way with an approaching locomotive." The vice of the instruction inheres in wholly disregarding the fact that the plaintiff's evidence tends to show that the plaintiff's attempt to cross the defendant's track was without negligence on her part, and that the dangerous position in which she found herself was in consequence of the neglect of the defendant in failing to give any warning of the approach of the engine. It left to the jury but one fact to pass on, viz.: "Was the plaintiff of sufficient age, intelligence and experience to know and realize the danger of being where she was and of attempting to cross in front of an approaching train?"

What has been said probably sufficiently disposes of instructions 18, 23 and 24; and as the case will have to be reversed because of the errors discussed, it will not be profitable to spend time in an examination of the sixteenth instruction to which exceptions are taken by the plaintiff. The error complained of arises more, we believe, from a use of words not aptly adapted to convey the idea in the mind of the court than in the announcement of an erroneous legal principle. No one can doubt under the decisions in this state, that the statute requiring the ringing of a bell or the sounding of a whistle was intended to give warning to those approaching a railway crossing as well as those actually on the track of the company, and we can hardly believe that the jurors would understand that because the court told them in this instruction "that the defendant company has a right, and it is lawful for it to cross Nicholas street with its engines and cross upon its tracks as it was doing at the time of the injury complained of," that it might negligently run over any one who might

25

be upon the crossing; the idea in the mind of the court, and intended to be conveyed by this language, undoubtedly was that the defendant had a lawful right to lay its tracks across the street and operate its engines thereon.

Error is also alleged on account of the refusal of the court to give instruction numbered 1 requested by the plaintiff. This instruction is too lengthy to be copied into this opinion, which is already extended beyond what is desirable. The material part of the instruction, and the legal principle embodied therein, is fairly set out in the following paragraphs taken therefrom: "You are therefore instructed that to entitle the plaintiff to recover in this case on account of failure to give a signal by bell or whistle in approaching the crossing, the following facts must be established by a fair preponderance of the evidence: First, that the defendant did at the time and place specified in plaintiff's petition run its engine onto the said crossing of Nicholas street over the defendant's tracks without giving a signal of the approach of said engine to said crossing by either bell or whistle; second, that said failure to give signal by a bell or whistle was under all the circumstances in this case shown by the evidence, negligence on the part of the defendant; third, that said negligence was the proximate cause of the injury to said Lena Geist. And fourth, that said Lena Geist sustained damages by reason of said negligence. Unless the evidence in the case establishes every one of the foregoing elements, the plaintiff would not be entitled to recover on account of the alleged negligence in omission to give a signal of the approach of said locomotive to said crossing, but if all of the foregoing elements are established by a preponderance of the evidence, your verdict should be for the plaintiff unless the said Lena Geist by negligence on her own part contributed to the injury." The court in its seventeenth instruction had told the jury "that the failure to ring the bell or give other warning of the approach of the train to the crossing, if such failure there was, does not in itself constitute negligence and entitle the plaintiff to recover, but such cir-

cumstance can only be considered by you in connection with others as tending to prove negligence on the part of the defendant company." Whether this announces a correct rule of the law under our statute, can not now be considered. It was the rule adopted by this court in *Chicago, B. & Q. R. Co. v. Metcalf,* 44 Nebr., 848, and has been followed in other cases. It was the rule applied by this court on the former appeal, and has become the law of the case and must govern the case to the end. *Hiatt v. Brooks,* 17 Nebr., 33; *Meyer v. Shamp,* 26 Nebr., 729. While a neglect of the statutory duty to ring the bell or blow the whistle of an engine on the approach to a crossing may be only evidence of negligence on the part of the company, the rights of the plaintiff are not dependent on the statute alone. The common law imposes on the defendant the duty to so operate its trains that others shall not be injured through its negligence. This court has often been called on to say what constitutes negligence, and the following, taken from the head notes in *Brotherton v. Manhattan Beach Improvement Co.,* 48 Nebr., 563, is probably as apt and brief a definition as can be found: "Negligence is the failure to exercise such care, prudence and forethought as under the circumstances duty requires should be given or exercised. It may consist in the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs would do. *Foxworthy v. City of Hastings,* 23 Nebr., 772, followed." Another definition is this: "The omission to do something which a reasonable man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do." *Omaha Street R. Co. v. Craig,* 39 Nebr., 601, 616. Under these definitions of negligence, it is evident that if ordinary care and prudence required the defendant to give warning of the approach of the engine to the crossing at Nicholas street, by ringing the bell or blowing the whistle, a neglect to do so would be negligence. Under the instruc-

tions asked by the plaintiff it was left with the jury to say whether, under all the circumstances in the case, the giving of these signals was necessary in the exercise of ordinary care, and if they found that ordinary care required it, then a failure to give such signals would be negligence. In the 17th instruction given by the court the jury were not only permitted to say whether, under the circumstances, the giving of the signal was necessary in the exercise of ordinary care, but they were told that even if they should find that ordinary care required the giving of such warning that even then the omission of the signal, that is, the omission to exercise ordinary care, was only evidence of negligence. It is urged by the defendant that the instruction now under consideration is objectionable as selecting out a circumstance or group of circumstances as to which there has been evidence, and telling the jury that if proved they constituted negligence. The facts upon which the jury were to determine the negligence of the defendant under this instruction were ultimate facts, viz.: Was a signal given, and did ordinary care and prudence require that one should be given under the circumstances in evidence before them? If these two facts were found as claimed by the plaintiff, negligence of the defendant was established as a matter of law. The instruction was as unobjectionable as would a charge in the case of one on trial for theft, that if he feloniously stole and carried away the property of another, intending thereby to deprive the owner permanently of his property and to convert it to his own use, he would be guilty of larceny. We think the instruction should have been given.

We recommend that the judgment of the district court be reversed and the case remanded for a new trial.

AMES and ALBERT, CC., concur.

By the Court: For the reasons above given the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.