## SOUTHERN PAC. CO. v. STEPHENS.

Circuit Court of Appeals, Ninth Circuit.
February 13, 1928.

No. 5179.

1. **Railroads** ⬅➡350(21)—Contributory negligence of automobile passenger killed at crossing held for jury.

Contributory negligence of accommodation passenger in open touring automobile, killed at crossing where railroad's tracks crossed road at an acute angle and view of approaching train was unobstructed, except by traction line's overhead crossing structure about 1,000 feet from the crossing, and by the pole lines along right of way, *held* properly submitted to jury.

2. **Railroads** ⬅➡350(7)—Negligence in failing to sound bell or blow whistle of locomotive approaching country crossing held for jury.

Negligence of railroad in failing to sound bell or blow whistle of locomotive, as required by state statute in approaching country crossing at speed of 50 to 60 miles an hour, *held*, under the evidence, for jury.

3. **Railroads** ⬅➡345(3)—Where negligence was alleged generally, competent evidence of circumstances constituting negligence, including engine's speed at crossing, held admissible.

Where plaintiff, suing for death of automobile passenger in crossing collision, alleged railroad's negligence in general terms, which, under California rule, was sufficient as against general demurrer, competent evidence of all the circumstances constituting negligence, including speed of the engine, was receivable.

4. **Railroads** ⬅➡316(2)—Railroad has right to operate trains at high speed over country crossings.

A railroad company has the right to operate its trains and locomotives at high rates of speed over highway crossings in country districts.

5. **Railroads** ⬅➡316(2)—Speed of over 50 miles an hour by locomotive approaching country crossing held not in itself negligence, and could be considered only in absence of warning signals.

Speed of between 50 and 60 miles an hour by locomotive approaching country crossing *held* not in itself actionable negligence, and it was a material consideration on issue of negligence only if warning signals required by state statutes were not given.

6. **Railroads** ⬅➡351(10)—Instruction for plaintiff, if automobile passenger's death at crossing was due to excessive speed of locomotive, held erroneous, as authorizing recovery even if statutory warnings were given.

Instruction that plaintiff, suing for death of passenger in automobile at crossing, was entitled to verdict if jury believed death resulted from "the excessive and unreasonable speed, if any, of the locomotive," *held* erroneous, and probably prejudicial to railroad, as authorizing verdict for plaintiff, even if jury found statutory warning signals were given; railroad being entitled to instruction that speed of locomotive could not of itself constitute negligence, and that question of warning signals was controlling issue.

In Error to the District Court of the United States for the Northern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Action by Mary E. Stephens, administratrix of the estate of Thomas R. Stephens, also known as T. R. Stephens, also known as Tom Stephens, deceased, against Southern Pacific Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

See, also, 16 F.(2d) 288.

Robt. T. Devlin, Wm. H. Devlin, and Devlin & Devlin, all of Sacramento, Cal., for plaintiff in error.

Martin I. Welsh and Joseph L. Knowles, both of Sacramento, Cal., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. As the result of a collision at a highway crossing in the country, near Sacramento, Cal., between a lone engine belonging to the plaintiff in error, hereinafter referred to as defendant, and an automobile in which Thomas R. Stephens and two other men were riding, Stephens was killed. Alleging negligence on the part of the engine driver, plaintiff, as administratrix of the estate of the deceased, recovered judgment, from which the defendant railroad company brings error.

[1] The accident occurred near midday. As they approached the crossing, both the engine and the automobile were moving in a southerly direction, upon lines converging at an acute angle. At a point a little more than 1,000 feet from the crossing, the structure of an overhead crossing of a traction line obstructed the view of an approaching train; but with that exception there was nothing to interfere with the vision of the men in the automobile, other than pole lines along the right of way. The automobile was an open touring car belonging to a telephone company, by whom the two men with Stephens were employed. One of these men, occupying the left side of the front seat, was driving the car. In the rear seat were the other man, on the left side, and Stephens, on the right

side, toward the railroad track. Stephens was in the employ of a power company, and had earlier in the day accompanied the telephone men to make some tests affecting both the telephone and power lines. After finishing their work in a given locality, the telephone men decided to go to another place to make tests. Stephens had no further duty, but asked and received permission to go with them, and the accident occurred in the course of this trip. Stephens was only an accommodation passenger, having nothing to do with the car or its control. Without going into details, upon a consideration of all the surrounding circumstances, we think that in respect to his responsibility the case is closely analogous to Southern Pacific Co. v. Wright (C. C. A.) 248 F. 261, and Trenholm v. Southern Pacific Co. (C. C. A.) 8 F.(2d) 452, and, under the principles therein recognized, the question of whether he was guilty of contributory negligence was properly submitted to the jury. The other automobile cases cited from this court, namely, Hines v. Johnson, 264 F. 465, Davis v. Slocomb, 288 F. 352, and Atchison, T. & S. F. Ry. Co. v. Spencer, 20 F.(2d) 715, are not thought to be out of harmony with this view.

[2] Upon the primary question of defendant's negligence, plaintiff's contention is that the engine approached the crossing at an excessive rate of speed, without either sounding the bell or blowing the whistle, as required by the statutes of California. Upon these issues the testimony was highly conflicting, the two surviving occupants of the car testifying there was no sounding of either bell or whistle, and the two engine men testifying the whistle was sounded a quarter of a mile away, and over the entire distance the bell was rung continuously. The two engine men also testified the speed of the engine was 35 miles an hour, and while there was no other direct testimony on the subject, from other facts in evidence, a fairly reasonable computation may be made of at least 50 miles an hour. We are therefore of the opinion that the court did not err in deciding to submit to the jury the question of defendant's negligence.

[3] The allegation of negligence is in general terms, but no objection was made thereto by either demurrer or motion, and it is conceded that, under the rule prevailing in California, the pleading was sufficient as against a general demurrer. 19 Cal. Jur. 671. That being true, competent evidence of all circumstances which separately or in combination constituted negligence, including the speed of the engine, was receivable.

The comprehensive charge to the jury was in the main eminently fair to defendant, and with the one exception to be discussed we find no substantial ground for complaint upon its part respecting either the instructions given or the requests refused. The exception relates to the subject of the speed of the locomotive. Defendant requested the court to advise the jury that, "in reaching your verdict, you must not consider any speed at which you may find the locomotive to have been traveling as negligence on the part of the defendant." This was declined, and in the course of the charge given, the court said:

"It was the duty of the defendant Southern Pacific Company to run its locomotives across the intersection of its tracks at the road in question with due regard for the safety of persons who might be using said crossing, and if you believe from the evidence that at the time in controversy here the defendant Southern Pacific Company failed to exercise such care as an ordinarily prudent person would exercise under the same or similar circumstances, and that its failure to use such care was the proximate cause of the death of said Thomas R. Stephens, then plaintiff is entitled to a verdict herein, unless you shall find that defendant has made out the defense of contributory negligence, as elsewhere explained in these instructions."

And later, in the closing paragraph of the charge in so far as it pertains to the question of liability, the court added:

"You are further instructed that the defendant Southern Pacific Company is held to the exercise of ordinary care in the operation of its locomotive to prevent injuring persons who have the right to be on and are using as public crossing over the line of its track, and if you believe from the evidence that the cause of the death of said Stephens in this case was the excessive and unreasonable speed, if any, of the locomotive of the defendant at such crossing, or if you believe that said death was due to the failure and neglect of said defendant, to exercise ordinary care in the giving of signals and warnings of the approach of its locomotive to said crossing, if you find such to be the fact, then plaintiff is entitled to a verdict, unless said Stephens was guilty of contributory negligence. By 'excessive and unreasonable speed' is meant such speed as exceeds that which is consistent with the exercise of ordinary care by the defendant."

In terms, at least, no exception was taken to the first paragraph, and as a general preliminary statement of the duty of defendant it is perhaps not subject to objection.

But without further advice explanatory of the rights of a railroad company respecting the speed of its trains and locomotives, and the meaning of the clause "with due regard for the safety of persons" using crossings, the jury might very readily have understood that it was the duty of the defendant at all times so to have its locomotives under control that collisions at crossings could be avoided. The paragraph is here referred to, not as being the substantive basis of any assignment, but as a background for the rejected request and the other instruction given, in respect to which there are specific assignments.

[4] Understood as declaring that the speed at which the locomotive was moving as it approached the crossing could not of itself be regarded as constituting negligence, the requested instruction or its equivalent should have been given. It is well settled that, in the absence of conditions not shown to have existed in this case, a railroad company has the right to operate its trains and locomotives at high rates of speed over highway crossings in country districts; and under the circumstances here shown, had it been conceded that the defendant was derelict in respect to no other duty, it would have been entitled to a directed verdict in its favor. By the plaintiff this proposition seems not to be seriously questioned; her contention being that defendant's alleged failure to give the requisite warning of the approach of the engine was "the salient and vital circumstance," and that, assuming such failure, a rate of speed might be held negligent which, if warnings had been given, would have been entirely within the defendant's rights.

[5] However that may be, we are of the view that under no construction of the evidence was the speed so great as in itself to constitute actionable negligence, and that it was a material consideration only in case the warning signals were not given. That in such contingency it might properly be considered we have no doubt. Granting that the failure to give the warning signals required by the statute constituted negligence, there is still the question whether under the circumstances such failure constituted the proximate and efficient cause of the accident. The only purpose of ringing the bell or sounding the whistle is to advise travelers on the highway of the approaching train, and if the traveler has knowledge from other sources the signal is of no value to him. But it would scarcely be suggested that a traveler is no more likely to be cognizant of a train slowly approaching, at right angles to the public highway, upon a track entirely open to the view for an indefinite distance, than of a lone engine, coming from the rear, at a speed of between 50 and 60 miles an hour, upon a track the view of which is slightly obstructed by pole lines, and wholly cut off at a distance of a quarter of a mile from the crossing.

[6] In this view of the significance, and the only significance, that could be legitimately accorded to the locomotive's speed, we are impelled to the conclusion that the closing paragraph of the court's instructions was erroneous, and was probably prejudicial to the defendant. We are unable to yield to the contention that thereby the jurors were advised only that they might consider speed as a circumstance. In unequivocal terms they were told that, if they believed the cause of Stephens' death "was the excessive and unreasonable speed, if any, of the locomotive," plaintiff was entitled to a verdict. If they understood the instruction at all, they must have understood that, even though they found the statutory warning signals were given, still they could rest a verdict for plaintiff upon the locomotive's speed. It was a close question whether the case should go to the jury at all. Upon the vital issue of warning signals there was for the plaintiff, who had the burden of producing a preponderance of proof, the negative testimony of two witnesses, as against the affirmative testimony of the two engine men. Defendant was entitled to have the jury advised that this was the controlling issue, with an explanation of the right, and the extent of the right, of a railroad company to move its trains and locomotives over its tracks at a high rate of speed, even at crossings in the country, and further that any speed they might, under the evidence, find the engine was traveling would not warrant a verdict for plaintiff, unless they also believed there was a failure to give appropriate signals.

The judgment is reversed, with directions to grant a new trial.