### GARRETT v. PENNSYLVANIA R. CO.
#### No. 4406.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1931.

EVANS, Circuit Judge, dissenting.

Raymond G. Real, of Mattoon, Ill., for appellant.

Harold F. Lindley, of Danville, Ill., and T. W. White and E. C. Hartman, both of St. Louis, Mo., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This suit was brought to recover damages for the death of Viola Mae Garrett, who lost her life in a railroad crossing collision on April 22, 1929. The deceased was riding in the back seat of an Overland Sedan automobile driven by her mother. The complaint consisted of five counts. The first count was based on general negligence; the second count charged the failure of appellee's train to sound a crossing warning as it approached the crossing where the accident happened, in accordance with Illinois statutes, Cahill's Rev. St. 1929, c. 114, par. 84; the third count charged that appellee willfully and wantonly failed to sound a crossing warning; the fourth count charged willful and wanton operation of the train at an excessive and unreasonable rate of speed as it approached the crossing; and the fifth count charged willful and wanton failure to keep a sharp lookout for any one who might be using the crossing. A plea of general issue was filed to all of the counts, and a special plea of contributory negligence was filed to the first and second counts.

At the conclusion of all the evidence the court directed a verdict for appellee on the ground that the evidence failed to establish willfulness or wantonness, and on the further ground that appellant's decedent was guilty of negligence which contributed to her death.

There was a sharp conflict in the evidence as to whether or not the statutory signals were given, and this fact was sufficient to require the jury's determination of that ultimate fact, unless the evidence showed that decedent was guilty of negligence which contributed to the injury, or that the accident was caused by willfulness of appellee.

After a perusal of the evidence we are convinced that there was no wantonness or willfulness shown on the part of appellee. There was no evidence upon which the jury could reasonably say that the speed of the

train, under all the circumstances, was so excessive and unreasonable as to amount to willful or wanton conduct; nor that there was an intentional failure to sound the statutory warning; nor that there was an intentional failure to keep a sharp lookout for travelers about to use the crossing; nor that there was a conscious indifference on the part of the engineer in relation to these matters. The court's ruling in this respect is fully supported by the principles enunciated in Conrad v. Wheelock (D. C.) 24 F.(2d) 996, and cases therein cited.

The remaining question to be considered is whether or not decedent was guilty of any negligence which materially contributed to her death. If upon the facts submitted she was not guilty of such negligence, as a matter of law, this case should have been submitted to the jury, otherwise not. It will therefore be necessary to set forth only so much of the evidence as applies to the conduct and actions of appellant's decedent.

The following facts are uncontradicted: Decedent was sixteen years of age, and her eyesight and hearing were good. She was able to assist her mother in the work in and about the house, and did so, and the family had formerly lived on a farm. At and immediately preceding her death she attended high school at Jewett, a few miles east of Woodbury, and was a member of the junior class.

At the southwest corner of Woodbury a paved road running east and west, and known as U. S. Road 40, intersects a dirt road running northeast and southwest. To the south of this intersection appellee's double-track railroad runs in an easterly and westerly direction almost parallel to U. S. Road 40, and intersects the dirt road above referred to at a slight angle. The south track is used by east-bound trains and the north track by west-bound trains. Measured in the center of the dirt road, the south edge of the pavement on U. S. 40 is 103 feet from the north rail of the south track, and 87 feet from the north rail of the north track. The station, which is only 12 feet 8 inches in width, north and south, lies north of the tracks and west of the dirt road. Its southeast corner is 30 feet west of the center of the dirt road, and its northeast corner is 36 feet 8 inches west of the center of said road. From a point in the center of the dirt road where it would intersect the south line of the station, if extended, to the north rail of the south track is 39 feet, and at such an intersection of the extended north line of the station to the same rail is 53 feet. Near the southwest corner of the intersection of U. S. Road 40 with the dirt road is a highway "stop" sign. It is 17 feet 2 inches from the center of the dirt road, 35 feet south of the paved road, and 46 feet 9 inches north of the north rail of the north track. Six feet south of this sign, and 20 feet 5 inches from the center of the dirt road, is a railroad crossing sign. Both of these signs are visible to travelers on both intersecting roads. A whistle post is located along the south side of the south track at a point 1,341 feet west of the intersection of the railroad with the dirt road. The railroad tracks running west from the station are considerably higher than the surrounding ground, and beginning with a fourth telegraph pole west of the station these poles are set at or near the base of the grade. At the time of the accident a water tank stood north of the tracks at a point 1,-400 feet west of the crossing. This tank and the cross-arms on the poles at the base of the grade would probably prevent a clear vision, from the pavement and perhaps some points on the dirt road north of the station, of a train approaching from the west until the train had passed the water tank. But at no point on the dirt road from the south side of the pavement to the north side of the station, or from the south line of the station to the south railroad track, was there anything to prevent a clear vision of an approaching train from the crossing to the whistle post, a distance of 1,341 feet.

On the afternoon of the accident Mrs. Garrett had driven the automobile to Jewett for her daughter, who was there in school. The daughter and a girl friend sat in the back seat, and the mother did all the driving. They came west on U. S. Road 40 to Woodbury and turned southwest on the dirt road referred to above. The automobile was stopped at a point from 6 to 10 feet south of the pavement when the friend got out of the machine and started to her home near by. The automobile then started toward the crossing, a distance of 93 to 97 feet, at a rate of speed of three to five miles an hour, and it was never stopped until it was struck by the train. When it arrived about opposite the station its speed was slackened as if it were going to be stopped, but it was not. Witnesses watched it as it was driven onto the track, at the rate of three to five miles an hour, and it was moving when hit by the train. One or more witnesses tried to attract their attention, but were unable to do so. One witness saw appellant's decedent in the automobile as it proceeded to the crossing, and

she saw her do nothing but throw up her hands "in mercy" just as they drove onto the track. The accident occurred about 4 o'clock in the afternoon; the day was clear and the roads were dry. The brakes of the automobile had been tested a day or so before and were in good condition, and the windows were clean.

A person about to cross a railroad track is bound to use ordinary care under all the circumstances of the situation. If he does not do so, and is injured thereby, he is guilty of contributory negligence. Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under all the circumstances of the situation; or doing what such a person, under the existing circumstances, would not have done. Shearman and Redfield on Negligence, vol. 1, § 1, note 1; Geist v. Mo. Pac. Ry. Co., 62 Neb. 309, 87 N. W. 43. Ordinary care is that degree of care which a person of ordinary prudence, under the particular circumstances, is presumed to exercise to avoid injury. Such care is required to be in proportion to the danger to be avoided and the fatal consequences that may result from the neglect. I. C. Ry. Co. v. Cheek, 152 Ind. 663, 53 N. E. 641.

When a person goes upon a railroad track he knows that he goes to a place where he may be killed if a train comes upon him before he is clear of the track. He knows he must stop for the train, not the train stop for him. In such circumstances if a driver cannot be sure otherwise whether a train is dangerously near, he must stop and get out of his vehicle, if necessary, to ascertain that fact. B. & O. R. R. Co. v. Goodman, Adm'x, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645.

A traveler approaching a railroad crossing must look and listen at places and at times where and when his senses will give notice of approaching trains. Kutchma v. A., T. & S. F. Ry. Co. (C. C. A.) 23 F.(2d) 183.

When a person is riding as a companion with the driver of an automobile, and they are approaching a railroad crossing in the act of crossing it, such companion is under the same duty as the driver to look and listen. While the negligence of the driver is not imputable to the companion, yet such companion is chargeable with contributory negligence if he fails to look or listen when by such looking or listening he could have seen or heard the train in time to warn the driver and thus avoid the injury. Bradley v. Mo. Pac. R. Co. (C. C. A.) 288 F. 484.

Where a railroad company is sued for personal injuries on account of its negligence, the burden is upon the company to prove contributory negligence if it relies upon such fact as a defense. Hayes v. Nor. Pac. R. Co. (C. C. A.) 74 F. 279; C. & E. I. Ry. Co. v. Divine (C. C. A.) 39 F.(2d) 537.

With these legal principles in mind we shall analyze the evidence. Unfortunately death has sealed the lips of those who possess the most accurate information relating to the conduct of the driver and appellant's decedent. With the exception of the testimony of one witness, who saw decedent "throw up her hands in mercy" just as they were driving in front of the engine, there is not one word of human testimony in the record as to whether either the driver or decedent saw the train before going on the track, or as to what either one did, if anything, to avoid the collision. The case is very unusual in that we are forced to rely entirely upon circumstances and presumptions in order to solve the problem; and yet we think these circumstances and presumptions quite unerringly point to its proper solution.

The law presumes, in the entire absence of evidence, that a person in crossing a railroad track looks and listens for coming trains before crossing. Texas & Pac. Ry. Co. v. Gentry, 163 U. S. 353, 16 S. Ct. 1104, 41 L. Ed. 186. The law presumes that a person in the act of crossing a railroad track saw what she could have seen had she looked, and heard what she could have heard had she listened.

When one is confronted with a dangerous situation, an inference of due care arises as to such one from the known instinct of self-preservation; and hence absence from fault may be presumed, in the absence of evidence to the contrary, from the general and known disposition of persons to take care of themselves and to keep out of the way of difficulty and danger. Bradley v. Mo. Pac. Ry. Co. (C. C. A.) 288 F. 484; Rittenhause v. Knoop, 9 Ind. App. 126, 36 N. E. 384.

The presumptions above enumerated do not constitute affirmative proof and cannot prevail against evidence or physical facts which show want of care (Bradley v. Mo. Pac. Ry. Co., supra); and with reference to the instant case it must be borne in mind that these presumptions apply to the mother, who was driving, as well as to the daughter, who was her companion. The evidence shows that the automobile was traveling from three to five miles an hour after it left the railroad

station, which was 39 feet from the track on *which the accident occurred.* The train was running from sixty to seventy miles an hour. Thus at the time the automobile left the station the train was not less than 468 feet nor more than 910 feet away from the crossing, and from this time until they reached the crossing there was nothing to prevent either the mother or the daughter from seeing the train if she looked. In fact, with the exception of the time that was consumed in passing the station, which on the angling road was 14 feet, they could have seen the train at any time after they left the paved road, if at such time the train had passed the water tank and pump house. If the daughter did not look she was guilty of negligence for not doing so; and the same may be said of the mother.

But the presumption is that the daughter did look and listen, and that she saw the train in ample time to warn her mother, and in ample time ordinarily for her mother to stop the car before reaching the crossing. If the *daughter did not so warn her mother,* she is guilty of negligence which would preclude a recovery.

However at this point a presumption arises in decedent's favor, based upon her instinct of self-preservation, to the effect that she did exercise due care, and did notify her mother; for to do less than this would not be exercising due care. It necessarily follows that unless some one or more of these presumptions are broken down by evidence, the *daughter cannot be held to be guilty of con-tributory* negligence. But these presumptions are to be applied to the mother as well as to the daughter. The mother saw the train in time to stop the car, for she is presumed to have looked. Even if she did not look she must have known the train was approaching, for the daughter warned her, if we are to rely upon the presumption applicable to the daughter. When the mother received this information she too is presumed, from her instinct of self-preservation, to have exercised due care to avoid the injury. Not only was self-interest present, but she had a mother's interest for the preservation of her child's life, which from common knowledge we know was dearer to her than her own life. The mind repels the thought that she intentionally failed to do all within her power to avoid the accident after her daughter warned her, and no such presumption will arise in favor of the daughter.

In the exercise of due care under the circumstances, considering them in the broadest limitations most favorable to the mother and daughter, there were only three things which could be done, and the mother is presumed to have done at least one. She could have stopped the car almost instantly; or she could have turned to the ditch, or increased the speed in hopes of clearing the track—either one of which would have manifested itself in the action of the car. On these points there is human testimony by which the truthfulness of the presumptions may be tested. The evidence is uncontradicted that the automobile went directly from the station to the point *of collision—it did not stop, it did not turn* toward the ditch, and there was no indication of a sudden increase of speed. An automobile is a very sensitive mechanism. Each application of the hand or foot to the controls of a traveling automobile registers immediately and manifests itself perceptibly to outside observers. The evidence is uncontradicted that none of these three things happened. It may be said that the mother might have been momentarily paralyzed through fear and was unable to do anything; but it is not likely that a person who is accustomed to driving an automobile will be so seriously affected when from 20 to 30 feet away from the track, and going from three to five miles an hour. We think the presumption that the mother did anything to avoid the accident must fall—not, however, intentionally or through fear, but because she did not know the train was coming—and she did not know it because she did not look when she should have looked, and her *daughter did not tell her in time. It is true* each of them had a right to look first to the east; but at the slow rate of speed they were going, and the distance they traveled with unobstructed view, they could easily have looked in both directions in time to avoid the accident. The daughter did not warn the mother because she did not know of the danger, otherwise she would be guilty of negligence; and the only reason she did not know of the danger was that she did not look. Neither is it likely that she was unable through fear to speak to her mother when they were 20 or 30 feet from the crossing. Here we have another bit of testimony which aids in interpreting her condition and her action. She could be seen by spectators through the back or the side of the automobile; one witness watched the machine going toward the track, and saw her in the machine, and the only thing she was observed to do was to "throw up her hands in mercy," as the witness expressed it, just as the automobile drove on the track. This action on the daughter's part is indicative of sudden information as well as

fear. It shows further that whatever may have been the condition of her voice, her arms and hands were not paralyzed.

We think that all the presumptions must fall before the evidence and the physical facts. Meager as the evidence is, it is uncontradicted, and it seems to us to render the conclusion unescapable that the daughter was guilty of negligence in not looking before going onto the track.

While it is ordinarily a question for a jury whether one who is injured in a railroad crossing collision, while riding as a guest in an automobile, is guilty of contributory negligence, yet in any case where the evidence is undisputed or is of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict should be directed for the other party. A. B. Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; So. Pac. Co. v. Pool, 160 U. S. 438, 16 S. Ct. 338, 40 L. Ed. 485; Union Pac. Ry. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434.

The evidence which bears upon the conduct of appellant's decedent is indeed quite limited, yet it is undisputed, and it is in irreconcilable conflict with the favorable presumptions with which the law clothes her, and hence the presumptions must give way.

The court did not err in directing a verdict for appellee.

Judgment affirmed.

ALSCHULER, Circuit Judge.

To my mind the testimony of eye-witnesses of the accident requires the conclusion that the occupants of the automobile were utterly heedless of the fact that they were moving toward a railroad crossing with which they were entirely familiar, and had no intimation of the rapidly approaching train, with which they would likely collide if their slowly moving car continued on its course. All the evidence indicates that on that bright afternoon there was practically nothing for as much as a thousand feet to interfere with plain view of the train, and that there were no diverting circumstances which might excuse inattention to the surroundings and the dangers as in C. & E. I. Ry. Co. v. Divine (C. C. A.) 39 F.(2d) 537. I see no escape from the conclusion that in approaching this crossing neither of the occupants of the car looked or listened for trains, and that the contributing negligence of appellant's intestate to this deplorable casualty bars right of recovery as a matter of law. I therefore concur in affirmance of the judgment.

EVANS, Circuit Judge (dissenting).

The rule requiring the direction of a verdict where the evidence is undisputed or of such a conclusive character that a verdict against it would be set aside by the court is well established. Equally well settled is the rule that a mere scintilla of evidence does not call for its submission to a jury. Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 69 L. Ed. 597; Mearns v. B. & O. S. W. R. (C. C. A.) 284 F. 31. It seems to the writer, however, that the evidence, inferences and presumptions in the instant case necessitated their submission to the jury for its determination of the passenger's contributory negligence. Ryan v. Del. L. & W. R. Co. (C. C. A.) 8 F.(2d) 138; Perucca v. B. & O. R. R. (C. C. A.) 35 F.(2d) 113; So. Pac. R. R. v. Stephens (C. C. A.) 24 F.(2d) 182; Trenholm v. So. Pac. Co. (C. C. A.) 8 F.(2d) 452; contra Bradley v. Mo. Pac. R. Co. (C. C. A.) 288 F. 484.

I find myself unable to reconcile the majority views expressed in this case with the majority opinion in Chicago & E. I. Ry. Co. v. Divine, 39 F.(2d) 537, recently decided by this court. The instant case discloses a slightly different fact situation from the Divine Case. Perhaps, a more persuasive argument to the jury might be made therefrom than in the Divine Case. In both cases, however, the evidence was such as to give rise to legitimate differences of opinion as to the facts as well as to inferences deducible therefrom.

The instant case must be differentiated from those cited by counsel, some of which appear in the majority opinion, because both of the participants in this accident met their death instantly, and, therefore, were unable to give any testimony explaining or throwing light upon the passenger's action or nonaction at the time of the accident. The present case is, therefore, one where the presumptions and the burden of proof figure large in the determination of the passenger's contributory negligence.

The meager testimony in the record bearing on this issue came from witnesses, who were some distance from the scene of the accident. It was therefore necessarily somewhat uncertain. This uncertainty is emphasized by the fact that such onlookers did not agree in all respects and as is usual in such situations none had reason to expect an accident until it occurred. One witness, in a car

200 feet away facing the opposite direction, said she saw the passenger throw up her hands "in mercy" just as the car went on the railroad track. No other of the five or six witnesses observed this action on the passenger's part and the position of the observer in her car and of the passenger in the wrecked car left room for argument both as to its occurrence and its significance. This statement, moreover, if accepted, must be interpreted in conjunction with other testimony and presumptions before the court could say as a matter of law that the passenger failed to act in accordance with the requirements of reasonable care, which the law exacted of the passenger. No witness was near enough to hear what took place between the two passengers, the mother and her daughter, at or just prior to the accident.

The passenger was the daughter of the driver. She was sixteen years old on the day of the accident. She occupied the rear seat of the car. Her mother was an experienced driver and familiar with the surroundings. It is undisputed that the driver drove the car slowly to a point beyond the station where she "almost stopped" before proceeding slowly toward the track. The distance between the station and the track was about 39 feet and it is presumed that she saw the oncoming train. The fact that she almost stopped the car after passing the station supports an inference that she looked and saw the oncoming train. Surely a jury might have so concluded from such slowing down of the car. This being a controverted issue, we must, on a motion to direct a verdict, resolve it in favor of the party opposing the motion.

The fact that she proceeded after almost coming to a stop gives rise to one of two inferences. Either she intended to stop the car before going on the track or she concluded that she could pass over the track before the engine reached the crossing. That she drove slowly, as the testimony indicates (as slow as three miles per hour) strongly supports the first inference. What took place between the two occupants of the car in this interim, no one knows. Whether the daughter called to her mother, whether her mother heard her, or whether the mother became confused or panic-stricken, are facts concerning which we can not speculate. Such inferences as may be drawn were for the jury to determine and the same fact finding tribunal was required to weigh them in the light of the applicable presumptions and burden of proof.

What was the duty of the passenger under the circumstances? Should she have spoken and warned her mother of the approaching train? The jury could not have found that she failed so to do. Should she have assumed that her mother was intending to drive upon the track before the car reached a spot where it could not be stopped to permit the train to go by? There is no evidence in the record to support an affirmative answer. What then, under like circumstances, would the reasonably prudent girl of sixteen years of age have done? Should she have jumped from the car?

The mentality, the experience and the care demanded of this supposititious individual, to wit, the reasonably prudent sixteen year old girl, is not definable in absolute terms. In a sense, such an individual is the creature of the composite mind of the jury. Viewed from the standpoint of twelve jurors, she may be chargeable with more information and possessed of greater insight and foresight than she would be were she the creation of the trial judge, who, the jury being waived, would have been required to determine the existence or absence of ordinary care. Likewise, it must be admitted that different members of the same jury might well entertain different views concerning the mentality and insight of the said reasonably prudent girl of sixteen years. To illustrate, in ascertaining what such a girl would do under like circumstances, would it not be reasonable to expect that different men on the jury might have given different weight to the confidence of a young girl in her mother's actions? Yet it is the so-called reasonably prudent girl of sixteen whose actions, under like circumstances, furnish the criterion by which the conduct and action of the passenger in this case must be judged. The standard not being absolutely fixed and defined, it is not easy for third parties to agree on what this conduct should be in a given case, and the uncertainty grows and the field of legitimate inquiry is widened when the proper function of the trial judge is applied. For there is a vast difference between finding that the action of a passenger did not measure up to the standard fixed by the reasonably prudent person of like age and similarly situated and a finding that a record discloses a controversy as to such issue.

I am unable to say that the evidence conclusively showed it was the duty of this girl to jump from the moving car. Nor am I able to say that the record conclusively shows that the passenger did not warn her mother against the oncoming train or attempt to direct the action of the driver. There being a

dearth of evidence showing what was or was not done by the passengers in the car or what did or did not pass in the way of admonitions, warnings, or entreaties on the part of the daughter, the disposition of the case is controlled by the burden of proof. This burden rested upon the appellee. It was its duty to establish contributory negligence. The death of the parties, who alone could throw light upon this issue, was its misfortune.

It follows, therefore, in my opinion, that it was for the jury to determine whether the burden of proof resting upon the defendant to establish the passenger's contributory negligence had been overcome.