## A. B. SMALL COMPANY *v.* LAMBORN & COMPANY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

No. 100.   Argued October 21, 22, 1924.—Decided March 2, 1925.

1. Contracts for the sale of sugar considered and *held* free from the objection that they made delivery optional with the seller and therefore lacked mutuality.  P. 250.
2. In an action by the seller on an intrastate contract for the sale and delivery of goods owned by the seller and title to which passed to the buyer unrestricted under the contract, the buyer can not defend upon the ground that the seller was party to a combination to manipulate interstate trade in goods of that kind in violation of the Anti-Trust Act and made the contract during the life of the combination and in conformity with standards sanctioned by it. It is only when the invalidity is inherent in the contract itself that the Act may be interposed as a defense to it.  P. 251.
3. Defenses based on §§ 4, 5 and 6 of the Lever Act, *held* insufficient on grounds stated in *Small Co.* v. *Am. Sugar Co. ante,* 233.  P. 252.
4. The duty of a seller of goods, in reselling on account of the buyer, is to sell fairly in a reasonably diligent effort to obtain a good price; the test is not whether he got the highest possible price or as much as others got in particular instances.  P. 253.
5. Evidence of particular sales held rightly rejected in the circumstances.  *Id.*
6. Where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict should be directed for the other party. P. 254.
7. The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury, has met with express disapproval by this Court and by many others.  *Id.*

8. Evidence *held* to establish conclusively that resales of goods, made by the vendor, were made fairly and within a reasonable time. P. 254.

Affirmed.

ERROR to a judgment of the District Court in favor of the plaintiff, Lamborn & Co., in an action brought to recover the difference between the contract price of sugar sold by plaintiff to defendant, and the amount obtained by the plaintiff on resale, the defendant having refused to accept delivery.

*Mr. Edgar Watkins,* with whom *Mr. Frederick T. Saussy, Mr. Mac Asbill* and *Mr. Horace Russell* were on the brief, for plaintiff in error.

*Mr. Orville A. Park,* with whom *Mr. Archibald B. Lovett* was on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

On April 30 and May 7, 1920, the parties to this case entered into contracts for the sale by one and purchase by the other of 450 barrels of refined sugar, to be shipped by the seller from a refinery at Port Wentworth, Georgia, to the buyer at Macon, in the same State, between July 15 and October 1. Late in July, 150 barrels were shipped, accepted and paid for. About that time the market price began to decline and continued downward for the rest of the year. Late in August the seller shipped 150 barrels more, but when it reached Macon the buyer refused to accept it, suggested that it be stored " for the benefit of whom it may concern," which was done, and notified the seller that any further shipment would be similarly refused. Correspondence followed in which the seller sought to persuade the buyer to adhere to the contracts. Late in September, before the expiration of the time for completing delivery, the seller notified the buyer that, if

the refusal to conform to the contracts was continued, the remaining 300 barrels, which included the 150 stored at Macon, would be resold for the account of the buyer and the latter would be held for the difference between the contract price and what was realized on the resale. The buyer persisted in the refusal and the sugar was resold.

This action was brought by the seller to recover from the buyer the difference between the contract price and the amount obtained on the resale. In the District Court a verdict and judgment were given to the seller; and the buyer brought the case here on direct writ of error, a constitutional question being involved.

One defense interposed by the answer was that the contracts were wanting in mutuality and therefore void. A demurrer to the defense was sustained, and this is assigned as error. Two clauses in the contracts are cited as making delivery optional with the seller, and therefore showing a want of mutuality. But in our opinion the clauses are not open to that construction. The contracts, signed by both parties, evidenced an agreement by the seller to deliver the sugar within a designated period at a fixed price, as well as an agreement by the buyer to take the sugar and to pay the price. They contemplated that the buyer might be accorded the privilege of calling for special deliveries, known as "withdrawals," during the prescribed period, if the seller was in a position reasonably to make them. And they contained alternative "terms" of payment—"Cash before delivery less 2%, or cash in seven days less 2%." The clauses in question then followed. One was, "Terms and withdrawal subject to the approval of the seller's credit department." Read in the light of established practices in the sugar trade, this clause meant that, when a shipment was made, the seller's credit department was to elect which of the alternative terms of payment should apply, and also that, if the buyer called for special deliveries, known as "with-

drawals," that department was to determine whether such deliveries reasonably could be made and was to approve or disapprove them accordingly. The clause was essentially subsidiary and entirely consistent with the seller's definite agreement to make delivery within the period prescribed. The other clause was to the effect that, " if the supply of raw material of the refinery manufacturing the sugar " should be interrupted by war conditions, embargoes, strikes, or other like cause, and if delivery was thereby pre-vented, the seller should " not be responsible." There is nothing in this clause which affords any basis for saying that delivery was to be optional with the seller. On the contrary, it recognizes that he was obligating himself to make delivery. Its evident and only purpose was to re-lieve him from liability in the event that performance of the obligation was prevented by particular circumstances, in their nature beyond his control. It is idle to suggest, as was done in argument, that the clause would permit him to avoid delivery by merely selecting a refinery which by reason of war conditions, embargoes or strikes was already cut off from a supply of raw material. That would not be within either the letter or the spirit of the clause, but would be a palpable fraud and unavailing. *Slater* v. *Savannah Sugar Refining Corporation,* 28 Ga. App. 280, 284.

The answer set up a special defense based on the Anti-Trust Act of July 2, 1890, c. 647, 26 Stat. 209, prohibiting restraints and monopolies in interstate and foreign com-merce. A demurrer to the defense was sustained and the ruling is assigned as error. But it was plainly right. In the first place, the contracts pertained only to intrastate commerce. They were negotiated in Georgia; the sugar was to be delivered from a refinery at Port Wentworth and shipped to Macon,—both in Georgia; and no facts were alleged showing that interstate or foreign commerce was

affected.  In the next place, and independently of the
character of commerce involved, it was not shown that the
contracts were in themselves invalid under the Anti-Trust
Act, but only that they were collateral to a combination
prohibited by it.  In substance, the defense was that the
seller and others had entered into a combination to ma-
nipulate interstate trade in refined sugar with a view to
increasing the price; that the contracts were made during
the life of the combination; and that the seller conformed
the terms of sale to standards sanctioned by the combina-
tion.  There was no allegation that it was not the owner
of the sugar; nor any allegation that the buyer was a party
to the combination or other than a stranger to it.  The
contracts disclosed the full transaction between the seller
and buyer and contemplated that the sale should pass the
title without any restriction on the right of the buyer
to resell as it might choose.  As has been pointed out
in prior cases, there is nothing in the Anti-Trust Act which
invalidates such a collateral contract or relieves the buyer
from his obligation under it.  *Connolly* v. *Union Sewer
Pipe Co.,* 184 U. S. 540, 550–552; *Continental Wall Paper
Co.* v. *Voight,* 212 U. S. 227, 257–259; *Wilder Manufac-
turing Co.* v. *Corn Products Co.,* 236 U. S. 165, 177.  It is
only where the invalidity is inherent in the contract that
the Act may be interposed as a defense.  With that ex-
ception the remedies which the Act provides for violations
of it are exclusive.  *Wilder Manufacturing Co.* v. *Corn
Products Co., supra,* 172, 175; *Paine Lumber Co.* v. *Neal,*
244 U. S. 459, 471; *Geddes* v. *Anaconda Mining Co.,* 254
U. S. 590, 593.

The answer also interposed a number of special de-
fenses based on sections 4, 5 and 6 of the Lever Act, c.
53, 40 Stat. 276; c. 80, 41 Stat. 297, and on particular
orders and regulations issued under it.  These defenses
were held insufficient on demurrer—some on the ground
that a part of the Lever Act was in conflict with the due

process of law clause of the Fifth Amendment. Some of the defenses were like those considered and rejected in *Small Co.* v. *American Sugar Refining Company,* just decided, *ante,* p. 233; and what was said of them there suffices to dispose of them here. The want of merit in the others is so obvious that they do not call for special notice. While the ruling on them is assigned as error, no attempt to support them is made in the brief.

The sugar which was resold by the seller for the account of the buyer consisted of 105,000 pounds—the 52,500 pounds stored at Macon and a like quantity remaining at the refinery. The market at that time was unsettled. Wholesale dealers had an oversupply, and retail dealers were buying cautiously and in small quantities. Nevertheless the prices realized on the resales equaled the full market price for that general region for quantities such as were resold. The 52,500 pounds stored at Macon was resold October 11th and that at the refinery November 3d. In both instances the defendant was advised of the price offered by the intending purchaser and was given an opportunity to secure a purchaser at a better price, but none was brought in. A resale of the 52,500 pounds at the refinery was negotiated October 15th, but through some delay in transportation it was not consummated. Another sale was then negotiated and was completed November 3d at a little higher price.

The defendant offered to prove by wholesale dealers in Macon the prices received by them on particular sales to retail dealers about the time of the resales; but the testimony was rejected, and we are asked to say that this was error. We think the ruling was right. The particular sales were in relatively small quantities, many of them under 300 pounds, and had no probative bearing on the fairness of the resales. The real question, as stated in *Small Co.* v. *American Sugar Refining Company, supra,* was whether the resales were fairly made in a reasonably

diligent effort to obtain a good price, and not whether the plaintiff got the best possible price, or as much as others got in particular instances. The unsettled state of the market and the difference between selling small quantities to retail dealers to satisfy immediate needs and selling large quantities to wholesale dealers who had an oversupply made is necessary to confine the evidence to the real question.

On the conclusion of the evidence the court directed a verdict for the plaintiff; and the remaining question is whether this was error. The defendant insists that it was, because it took from the jury the question whether the resales were made within a reasonable time. The period for delivery under the contracts expired September 30th, and the court ruled that the duty to resell within a reasonable time arose at that time, which was practically conceded. One of the resales was made October 11th. Another was negotiated October 15th but fell through, and an effective one was made November 3d.

The rule for testing the direction of a verdict, as often has been held, is that where the evidence is undisputed, or of such conclusive character that if a verdict were returned for one party, whether plaintiff or defendant, it would have to be set aside in the exercise of a sound judicial discretion, a verdict may and should be directed for the other party. The view that a scintilla or modicum of conflicting evidence, irrespective of the character and measure of that to which it is opposed, necessarily requires a submission to the jury has met with express disapproval in this jurisdiction, as in many others. *Improvement Company* v. *Munson*, 14 Wall. 442, 448; *Pleasants* v. *Fant*, 22 Wall. 116 122; *Bowditch* v. *Boston*, 101 U. S. 16, 18; *Anderson County Commissioners* v. *Beal*, 113 U. S. 227, 241; *Delaware, etc. R. R. Co.* v. *Converse*, 139 U. S. 469, 472.

We are of opinion that the evidence as set forth in the record conclusively established that the resales were

made within a reasonable time.   The state of the market was such that it was difficult to make any sales; and the quantities to be sold enhanced that difficulty and also the need for care.   The witnesses for the plaintiff described with much detail the efforts which were made, and the evidence as a whole reasonably admitted of no other conclusion than that the efforts were timely, well directed and persistent.   Many bids were received, but almost all were so low that their acceptance would have meant a great sacrifice.   The defendant was notified of the purpose to resell, but made no effort to advance it in point of time or to bring in a purchaser at an acceptable price.   Considering the state of the market, the outcome appears to have justified both the time and care taken by the plaintiff.

*Judgment affirmed.*