## MARTIN et al. v. MEMPHIS STONE & GRAVEL CO.

### No. 6075.

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1931.

Jas. A. Cunningham, of Booneville, Miss., for appellants.

W. C. Sweat, of Corinth, Miss., for appellee.

Before FOSTER, Circuit Judge, and GRUBB and DAWKINS, District Judges.

FOSTER, Circuit Judge.

Appellants, the widow and minor children of Clarence Martin, brought suit to recover damages for his death at the hands of Bud McGrady, alleged to have occurred at a time when McGrady, as general superintendent of appellee, was acting for it within the scope of his authority and to further its business. Error is assigned to the direction of a verdict for defendant.

It is shown without dispute that McGrady operated the steam shovel and was general superintendent at the Oldham gravel pit of appellee. He kept the time of the men and made up the pay rolls, but had nothing to do with fixing the amounts due them. That was done at the general office of the company in Memphis, and pay checks were then forwarded by mail to McGrady, who delivered them. Martin had not been employed at the Oldham pit for over a year, but had done some work digging test wells on the Jordan property belonging to appellee, for which he was entitled to pay. McGrady did not employ him and had no control over him. On the day of the tragedy two checks covering this work had been sent by mail to McGrady. Martin accosted McGrady on the dump alongside the railroad track and demanded his check. He thought he was entitled to $37.50. It is not shown that at that time any one had seen the two checks that had been sent. McGrady thought the check would be for $32.50. A dispute arose and a fight occurred. McGrady testified that Martin slashed at him with a knife and after he got him down told him he would cut his head off and that he intended to torture him a while before killing him, and beat him severely about the head with the handle of the knife. The testimony of physicians who examined McGrady shortly after the occurrence is to the effect that he had been severely beaten about the head with a jagged instrument. During this fight the mail was scattered and other employees assisted in picking it up. A short distance from where the first fight occurred Martin renewed the controversy and again demanded his check and stated to McGrady, "If you don't give me my check this fight has just started," at the same time pushing up his sleeves, although his hands were empty. McGrady then pulled out a pistol and fired several shots at Martin, the last one proving fatal. There had been trouble between the men before, and McGrady had armed himself by borrowing a pistol from the store that morning, anticipating trouble with Martin. There is some conflict of testimony as to the custom of paying off the men. McGrady had handed a check to one man that morning outside the office after receiving the mail, but he testified it was his custom to pay off only in the office or in the store in the presence of the storekeeper, so that the men might be required to settle their accounts. Other evidence was to the effect that it was customary to hand the pay checks to the men wherever they happened to be. This conflict is immaterial, as it was not shown that McGrady was in a position to hand the check to Martin at the time it was demanded, nor was he with authority to adjust his pay in any way.

There is no doubt whatever that Martin was the aggressor in the fatal controversy. We are not called upon to determine whether the homicide was justified, as it is immaterial to the case before us. It is evident that the fight and subsequent homicide were matters purely personal to the parties and not involving appellee. Conceding that damages may be recovered from an employer for an assault by an employee while acting within the scope of his employment, it would be stretching the doctrine beyond the breaking point to apply it to the facts shown in this case.

It is well settled in federal courts that, where the evidence so clearly preponderates in favor of a party that in the exercise of sound discretion the judge would be justified in setting aside a verdict for the other party and awarding a new trial, it is his duty to direct the verdict. Pleasants v. Fant, 22 Wall. 116, 22 L. Ed. 780; Small Co. v. Lamborn, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597.

The record presents no reversible error.

Affirmed.