## MURRAY CO. v. HARRILL et al.
### No. 429.

Circuit Court of Appeals, Tenth Circuit.
July 21, 1931.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Action by the Murray Company against T. C. Harrill and another. Judgment for defendants, and plaintiff appeals.

S. P. Freeling of Oklahoma City, Okl. (Freeling & Box, of Oklahoma City, Okl., on the brief), for appellant.

Thos. H. Owen, of Oklahoma City, Okl., and John C. Graves, of Wagoner, Okl., for appellees.

Before LEWIS and COTTERAL, Circuit Judges, and POLLOCK, District Judge.

COTTERAL, Circuit Judge.

The Murray Company brought this action against T. C. Harrill and J. A. Harris to recover upon two notes and an account, on which there was due $12,250.85, with interest and attorney's fees. The defendants answered, admitting their liability, but pleaded set-offs of approximately $21,450, as commissions earned by them on sales of fifteen cotton gins for plaintiff, pursuant to a written contract; and they prayed a recovery of the excess of their demands. The plaintiff replied, admitting the contract, but denying that defendants earned any commission except of 5 per cent. upon a sale to J. M. Hill, amounting to $1,350. The cause was tried to a jury, which returned a verdict in favor of the defendants for $108. Judgment was rendered on the verdict; and the plaintiff appeals.

The contract set out in the answer consisted of a letter of the company, accepted by the defendants. It provides in substance: The company agreed that defendants might sell its products in Oklahoma east of the Santa Fé Railroad for a commission of 10 per cent. and a like discount on their own purchases of gin machinery and steam power, and 5 per cent. on the sale of motors. The company had an agreement with John A. Simpson, of the Farmers' Educational and Co-Operative Union, to use his influence in promoting sales to members of the union and allied organizations. Where he had begun negotiations, the defendants were not to interfere, but would when called upon cooperate in securing a sale for one-half the above commission. W. O. Cauthon, a salesman of the company, was to assist them in any deal initiated by them, but where he should initiate it they were to have no commission. Their expense of travel was to be paid by the company. The contract was subject to cancellation by either of the parties on 15 days' written notice.

The defendants also allege in their answer what appears to be their views of the contract or modifications thereof to this effect: It was agreed and understood that their services would consist of soliciting purchasers of plaintiff's gin machinery, bringing them and salesmen of the company together, assisting purchasers in securing gin permits from the corporation commission of Oklahoma by proof of their qualifications and the necessity of the gins. They faithfully and diligently rendered these services with the knowledge and consent of the company, that it accepted the services, and by their co-operation with the salesmen the gins were sold and the commissions were thereby earned.

The defendants had the burden of proof. Their evidence was largely a departure from the contract terms. Its trend, instead of being adduced to show actual sales of gins, pursuant to the contract, showed oral negotiations and understandings, correspondence with purchasers and the company, services rendered in aiding customers to obtain gin permits from the corporation commission, and various conversations and acts relative to sales. In two instances, sales were claimed to patrons west of the railroad, with approval of the company.

884

There were objections at the outset, but they were soon abandoned. And both parties appear to have tried the case as an inquiry into the part defendants had in the various sales made and the services they rendered, without due regard to the facts essential to the commissions under the written contract. Some of the alleged sales were not made. There were two concessions to defendants by the plaintiff, one in the reply of a sale to Hill, and another at the trial of a sale to Babson on which commissions were due defendants, aggregating $1,567.-89.

■ The court submitted the issues to the jury mainly upon an instruction that if the defendants found the customers and brought the parties into contact, the commissions should be allowed. The jury was also instructed to consider oral communications between the parties. Plaintiff's counsel appear to have acquiesced in these instructions. We do not review them or consider whether in most instances they were justified by sufficient evidence, for want of proper exceptions. The single assignment we may consider arises upon the exception saved to the refusal by the court of a request tendered by plaintiff's counsel at the close of the evidence, as follows: "The jury are instructed that there is no evidence that the defendants made sales or were instrumental in making sales to Ray Williams of Avant, to E. O. White of Bokchito, to Joe Abraham, to H. L. Minnick of Coyle, to J. J. Ryals of Hastings, or to Croisant & Son of Muskogee, and you cannot allow the defendants credits for commissions on said sales."

While the request was refused, the court later took from the jury the claims to commissions on the sales to Williams and Abraham, amounting to $835. The four other claims embraced in the request remain for consideration, on which commissions are claimed of $4,728.17.

There was evidence to show some efforts by the defendants to induce the sales to White, Minnick, and Croisant & Son. Simpson promoted the sales to White and Minnick, but we find no evidence in the record that those sales were initiated by the defendants and that they were entitled to commissions under the contract. And both those parties obtained their permits with the aid of Simpson. There was an absence of evidence to show the sale to Croisant & Son was initiated by the defendants. They obtained their permit with the aid of their own attorney. Besides, the testimony is undenied that they refused to buy a gin if the defendants had anything to do with it. There was testimony that plaintiff's sales manager orally agreed to allow defendants a commission on a sale to Ryals, located west of the railroad, in consideration of their assistance, but assuming the validity of the oral agreement there was no evidence that the assistance was rendered.

It is obvious that there was no sufficient evidence on which to predicate a verdict which found commissions were earned by the defendants on these four sales.

■■ The jury should not have been allowed to guess whether these commissions were earned. A scintilla or modicum of evidence was insufficient to sustain them. A verdict should be directed when the evidence is undisputed, or when it is of such conclusive character that a verdict to the contrary should be set aside, in the exercise of sound judicial discretion. Small Co. v. Lamborn, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597; Slocum v. N. Y. Life Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. Ed. 720.

Without considering the four claims to commissions, the jury might have returned a verdict for the plaintiff. It is impossible to determine that some or all of them were not credited to the defendants. For the error committed in refusing plaintiff's request excluding them, the judgment is reversed, with direction to grant a new trial of the cause.

Reversed.