## BARNSDALL REFINING CORPORATION v. BIRNAMWOOD OIL CO.
### No. 4920.

District Court, E. D. Wisconsin.

March 29, 1940.

Richardson, Robertson, Reeder & Stearns and Howard Johnson, all of Milwaukee, Wis., (Gentry Lee, of Tulsa, Okl., of counsel), for plaintiff.

Harry L. Potter, of Madison, Wis., and Francis E. McGovern, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

Plaintiff brought this action for payment of an account for merchandise sold and delivered by it to the defendant, said merchandise consisting of petroleum products.

The defendant has interposed its sixth amended answer, set-off, and counter claim.

Plaintiff moves to dismiss the second cause of action in the counter claim for the reason that same is not pleadable as a counter claim, and that therefore the court lacks jurisdiction of the subject matter and of the plaintiff in relation thereto. In the alternative the plaintiff moves to dismiss the second cause of action in the counter claim for the reason that it fails to state a claim against the plaintiff upon which relief can be granted.

Summarized, the second cause of action in the counter claim, after alleging the corporate existence of the plaintiff, and Barnsdall Refineries, Inc., and the defendant, also alleges the corporate existence of the Buth Oil Company located at Appleton, the Wingrove Oil Company located at Sheboygan, the Pennsylvania Oil Company located at Madison, and the Big Falls Oil Company located at Big Falls; and alleges: that said companies were jobbers and distributors of plaintiff's petroleum products and competed with the defendant as rival jobbers; that petroleum products shipped by plaintiff to defendant were shipped in interstate commerce; that in the execution of the contract sued on, plaintiff knowingly granted discriminatory prices, greater marginal protection and other advantages on petroleum products to said Buth, Wingrove, Pennsylvania, and Big Falls Companies; that defendant was unable to compete with said companies due to the discrimination and other advantages alleged; that defendant did cede part of its territory, granted by its contract with plaintiff,

centering in and around the city of Clintonville, to a competing jobber because of defendant's inability to meet prices and advantages for gasoline and oils fixed by other jobbers of plaintiff's products; that the effect of the discrimination in the price of gasoline and other petroleum products sold by the plaintiff and its assignors to defendant, and the price of such gasoline and petroleum products of like grade and quality sold and distributed by them to others, was substantially to lessen competition and was intended to create a monopoly in the said gasoline and other petroleum products; and that the acts of the plaintiff injured and destroyed competition between the defendant and other dealers. There is a further allegation that as a result of said acts on the part of plaintiff, this defendant has been injured in its business and property in that during said years from 1931 to 1936, inclusive, the volume of its sales and profits derived therefrom greatly declined and defendant suffered heavy damages as a result thereof, and is entitled to recover three-fold such damages sustained by it, and costs of this suit including a reasonable attorney's fee.

Whether the second cause of action in the counter claim is properly pleadable, as such, depends on whether the facts in this case are controlled by the Connolly case (Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679) or the Continental Wall Paper case (Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486). Undoubtedly the Connolly case is still the law, except insofar as it is necessarily modified by the Wall Paper case. I am in accord with the expressions contained in the opinions of International Harvester Co. of America v. Oliver, C.C., 192 F. 59, 66, and in Sinclair Refining Co. v. Wilson Gas & Oil Co., D.C., 52 F.2d 974, 975, to the effect that while there is a clear distinction between these cases, the application to particular facts may at times be somewhat difficult. In the Sinclair case, supra, the court was of the opinion that the facts in that case brought it within the rule of the Connolly case, and it therefore sustained a motion to strike the counter claim, which was based on treble damages for violation·of the anti-trust laws.

In the Connolly case the sewer pipe company brought suit against Connolly on two promissory notes executed and given by Connolly for the purchase of sewer pipe. Connolly claimed a set-off for triple the amount of actual damages, claiming the plaintiff violated the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note.

In the Continental case (which was a five to four decision), the wall paper company sued to recover $56,752.10 as the balance of an account for merchandise sold and delivered. In the lower court, judgment was entered for defendant on the third defense which alleged a conspiracy in violation of the Sherman Act, and that defendant was compelled to become a part of the conspiracy or go out of business. The defense was not a counter claim or set-off for damages by reason of a violation of the Sherman Act, but that the court should not enforce an illegal contract, the illegality arising from a violation of the Sherman Act. It further appears that as a part of the illegal scheme, the plaintiff corporation was created, which, by the agreement, became the purchaser of the products of the constituent companies and was to sell same. The defendant, a jobbing house, and all other jobbers, were compelled to sign a contract which bound them to buy all the wall paper needed in their business from plaintiff. The Supreme Court, in the Wall Paper case, said (212 U.S. page 260, 29 S. Ct. page 291, 53 L.Ed. 486): "The present case is plainly distinguishable from the Connolly Case. In that case the defendant, who sought to avoid payment for the goods purchased by him under contract, had no connection with the general business or operations of the alleged illegal corporation that sold the goods. He had nothing whatever to do with the formation of that corporation, and could not participate in the profits of its business. His contract was to take certain goods at an agreed price, nothing more, and was not in itself illegal, nor part of nor in execution of any general plan or scheme that the law condemned. The contract of purchase was wholly collateral to and independent of the agreement under which the combination had been previously formed by others in Ohio."

The court then distinguishes the Wall Paper case (212 U.S. page 261, 29 S.Ct. page 291, 53 L.Ed. 486): "The case now before us is an entirely different one. The Continental Wall Paper Company seeks, in legal effect, the aid of the court to enforce a contract for the sale and purchase of goods which, it is admitted by the demurrer, was in fact and was intended by the parties

to be based upon agreements that were and are essential parts of an illegal scheme. * * *"

Further: "The present suit is not based upon an implied contract of the defendant company to pay a reasonable price for goods that it purchased, but upon agreements, to which both the plaintiff and the defendant were parties, and pursuant to which the accounts sued on were made out, and which had for their object, and which it is admitted had directly the effect, to accomplish the illegal ends for which the Continental Wall Paper Company was organized. If judgment be given for the plaintiff the result, beyond all question, would be to give the aid of the court in making effective the illegal agreements that constituted the forbidden combination. These considerations make it evident that the present case is different from the Connolly Case. In that case the court regarded the record as presenting the question whether a voluntary purchaser of goods at stipulated prices, under a collateral, independent contract, can escape an obligation to pay for them upon the ground merely that the seller, which owned the goods, was an illegal combination or trust, * * * The question here is whether the plaintiff company can have judgment upon an account which, it is admitted by demurrer, was made up, within the knowledge of both seller and buyer, with direct reference to and in execution of certain agreements under which an illegal combination, represented by the seller, was organized."

The Supreme Court in later decisions discussed the difference between the Connolly case and the Wall Paper case. In D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 35 S.Ct. 398, 59 L.Ed. 520, Ann.Cas.1916A, 118, where the refining company sued for the price of corn syrup sold and delivered to defendant and defendant claimed as a defense that the refining company was part of an illegal conspiracy under the anti-trust laws, the court held that such defense could not be asserted as there were no elements of illegality inherent in the contract itself.

In A. B. Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597, where the plaintiff sued for the purchase price of sugar and the defense was raised that the contract was illegal because plaintiff was part of an illegal conspiracy under the anti-trust laws, the court rejected this defense, saying (267 U.S. page 252, 45 S.Ct. page 302, 69 L.Ed. 597): "* * * it was not shown that the contracts were in themselves invalid under the Anti-Trust Act, but only that they were collateral to a combination prohibited by it."

The court said further: "As has been pointed out in prior cases, there is nothing in the Anti-Trust Act which invalidates such a collateral contract or relieves the buyer from his obligation under it." (Citing the Connolly, Continental Wall Paper, and Wilder cases, supra) "It is only where the invalidity is inherent in the contract that the act may be interposed as a defense. With that exception the remedies which the act provides for violations of it are exclusive."

In Bell v. Lamborn et al., 4 Cir., 2 F.2d 205, 207, the court said: "The defense that in violation of the Sherman Act * * * the plaintiff in association with others created a monopoly or trust in sugar is not available to the defendant to defeat the recovery of the purchase price of goods. The remedy provided by the Anti-Trust Act of 1890 is exclusive."

The court distinguishes the Continental Wall Paper case and holds "In the case before us the defendant was not a participant in the illegal combination and his purchases were not in furtherance of it."

In the Sinclair Refining Company case, supra, the facts are quite similar to the case at bar. The Sinclair Company had furnished large quantities of petroleum products for which the defendant had paid in part. The plaintiff sued for the balance due and the defendant in a counter claim asked judgment for three times the amount because of a violation of the anti-trust act. The court in that case said (52 F.2d page 975): "We think that the contracts which have been held by the courts to be the basis of a defense or counterclaim in suits for debt have been contracts between the major parties to an agreement in restraint of trade, parties who occupy such an important place in the handling of a particular commodity as to substantially control the sale of that particular commodity, by reason of the very contracts on which suit is brought. These contracts are distinguished by the cases from the contracts between one of the major companies handling a commodity and its own subagents."

The opinion states further (52 F.2d page 976): "In short, the defendant here, an agent like a hundred other agents selling the plaintiff's products, had no part in the

determination of the major policies of the plaintiff, Sinclair Company. His contract with Sinclair was concerned only with the buying and selling of petroleum products within a limited area. However complicated or extensive the terms of his contract may be, it is not inherently invalid."

The contract, which the defendant herein held, has not been attached to defendant's pleadings. However, there is no allegation that the contract in and by itself is illegal. This case, therefore, must be governed by the rules in the Connolly case, and the motion of the plaintiff to dismiss the second cause of action in the counter claim will be granted.

 It is urged that the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, would authorize such a counter claim in order that all possible claims between the plaintiff and defendant might be settled in one action. However, prior to the adoption of the new rules, it is clear that no right of counter claim based on the anti-trust act would be proper in this case. Rule 82 specifically provides that the rules shall not be construed to extend or limit the jurisdiction of the District Courts. The right to counter claim would be a substantive right and it must be held that the new rules did not attempt to confer any substantive rights.

The alternative motion of plaintiff to dismiss the second cause of action in the counter claim, for the reason that it fails to state a claim against plaintiff, need not be considered in view of the decision on the first motion.

Insofar as this opinion and the order to be based hereon may conflict with the order which this court entered October 11, 1939, said latter order may be considered vacated and set aside.

The court has heretofore passed on plaintiff's motion to strike certain portions of the third cause of action in the counter claim and has given defendant additional time to amend same if it so desires. Therefore, this motion to dismiss the third cause of action will be denied without prejudice to renew same after defendant has amended same or indicated that it does not desire to do so. The same will hold true as to plaintiff's motions to make Paragraphs 31 and 33 more definite and certain.

 Motion No. 7 is divided into numerous requests for a bill of particulars; some sixty-six different inquiries are made. Many of the questions are directed to evidentiary facts. Furthermore, a bill of particulars has been heretofore furnished to the plaintiff under date of May 9, 1938. In addition, the deposition of William Beversdorf, the president of the defendant company, has been taken on January 18, January 31, and May 11, 1939, and he was examined fully as to the answer and counter claim of his company. In addition, by agreement of the parties, the defendant submitted to plaintiff's attorneys and agents all of its vouchers and receipts and other documents showing sales of gasoline and petroleum products. Under the circumstances the motion for bill of particulars will be denied.