**In the Matter of OTTO'S LIQUOR, INC., Alleged Bankrupt.**

**No. 3-70-690.**

United States District Court, D. Minnesota, Third Division.

Sept. 28, 1970.

Goff & Goff, by Sydney W. Goff, St. Paul, Minn., for the alleged bankrupt.

Shanedling, Phillips, Gross & Aaron, by Felix M. Phillips and Bert M. Gross, Minneapolis, Minn., for three petitioning creditors, Johnson Brothers Wholesale Liquor Co., Inc., Griggs, Cooper & Co., Inc. and McKesson Liquor Co.

NEVILLE, District Judge.

The question for decision is whether an alleged bankrupt, a retail liquor dealer, against whom three creditors have filed an involuntary petition in bankruptcy can assert as a defense to its insolvency in a trial by jury that the three petitioning creditors and others, all wholesale liquor dealers, have so conducted themselves as to be in violation of the Federal and the State of Minnesota antitrust and similar laws, thus allegedly rendering their claimed debts void and requiring a dismissal of the petition. Were such to be the finding and were a dismissal to be granted it would leave the alleged bankrupt in a solvent position, for of indebtedness approximating $190,000, some $161,000 represents the claims of wholesale liquor dealers. If these latter are void, the alleged bankrupt undoubtedly

is solvent in view of its ownership of other tangible assets.

Following the filing of the petition by the three creditors, the alleged bankrupt filed an answer and demanded a jury trial pursuant to 11 U.S.C. § 42. The jury returned a verdict finding the alleged bankrupt insolvent. At the trial the court declined to receive evidence on, or submit to the jury the question of the aforesaid alleged antitrust violations and reserved its ruling thereon.[1] The alleged bankrupt contended that its name, license and good will had a value of some $150,-000, an amount which together with its other assets would be sufficient to render the alleged bankrupt solvent even were none of its indebtedness found to be void. Since the alleged bankrupt was defeated on this issue by the finding of insolvency by the jury, the question now is squarely before the court as to whether a further jury trial should be had to test and determine the validity and legality of the indebtedness of some $161,000 owed to the wholesale liquor dealers as creditors.[2]

In its amended answer, the alleged bankrupt affirmatively alleges that petitioners' claims are the result of sales and deliveries of liquor which " * * * were in violation of the provisions of Minnesota Statutes Annotated Section 325.81 and in violation of the provisions of a number of laws of the United States, including, but not limited to, the Sherman Anti-Trust Act, the Clayton Act and the Robinson Patman Act"; that these transactions "were and are illegal, invalid and unenforceable," and that petitioner's claims are not provable claims within the meaning of the Bankruptcy Act, in that such claims " * * * constitute the unpaid amount of the prices charged the respondent by the petitioners in connection with, as a part of, and resulting from the said illegal, invalid and unenforceable transaction engaged in by petitioners, which prices were and are unfair, unreasonable, excessive, arbitrarily fixed by petitioners acting in violation of the aforesaid laws and compelled by petitioners to be accepted by respondent. * *"

In its brief, the alleged bankrupt [respondent] claims to be able to prove *per se* violations of the antitrust laws such as fixing and manipulation of prices, the

1. The court was motivated in part in its determination to bifurcate the issues for trial by the fact that the jury trial was held less than two months after the filing of the creditors' petition and the antitrust claim was represented to require extensive discovery and many days of trial time. Had the jury found in the trial that was held on September 9, 1970 that the alleged bankrupt was solvent and thus that no act of bankruptcy had in fact been committed, the antitrust question would have become immaterial.

2. Reference is made to this court's prior order of August 26, 1970 for a more detailed statement of the facts of this case. At the opening of the trial on September 9, 1970 counsel for the petitioning creditors moved to amend his petition to allege the commission of the third act of bankruptcy as defined in 11 U.S.C. § 21, namely that Otto's Liquor, Inc.:
"* * * (3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date there-

of or at least five days before the date set for any sale or other disposition of such property * * *"
It was undisputed in the evidence that the State of Minnesota acquired a judgment against Otto's Liquor, Inc. in the amount of $2,700.08 on July 20, 1970 for unpaid sales taxes which was not satisfied, vacated or discharged within 30 days thereafter. July 20, 1970 was six days after the original filing of the involuntary petition on July 14, 1970. Though counsel for the alleged bankrupt at first objected, ultimately it was stipulated that the amendment could be granted and that the date for determining insolvency would be either or both July 20, 1970 or July 14, 1970, the date of the filing of the petition. Since only six days' time elapsed between these dates and since the business of the alleged bankrupt had not operated after June 27, 1970, it seemed clear that no material financial change took place during those six days. The court appreciated the willingness of counsel so to stipulate and thus avoid the useless procedure of dismissing the present petition only to have another filed shortly setting up the claimed third act of bankruptcy.

arbitrary allocation of geographical sales to wholesalers by distributors, the stifling of competition, and incipient monopolies and trade restraints between and among the liquor wholesalers in this state.

While state law governs in general the rights and duties of sellers and purchasers " * * * the effect of illegality under a federal statute is a matter of federal law." Kelly v. Kosuga, 358 U.S. 516, 519, 79 S.C. 429, 431, 3 L.Ed.2d 475 (1959). In none of the federal antitrust laws has congress seen fit to authorize the affirmative defense asserted by respondent. Four means of enforcing the antitrust policy are provided under the Sherman Act; criminal penalties, injunction by a government initiated suit, property forfeiture and private treble damages suits. 15 U.S.C. §§ 1–7, 15.

See Lockhart, Violation of Anti-Trust Laws as a Defense in Civil Actions, 31 Minn.L.Rev. 507, 508 (1947) where it is stated:

" * * * Nothing in the act as it came from Congress expressly authorized violation of the Sherman Act to be asserted as a defense to a civil action. This was no oversight, for the legislative history shows that such a sanction was repeatedly called to the attention of the lawmakers at the time Sherman Act was under consideration.

Seven of the twenty-one anti-trust bills introduced in Congress in the same month as the original Sherman bill contained sections authorizing such a defense in various terms. Two expressly provided that the purchaser of any commodity from a violator would not be liable for the price. Five deprived the federal courts of jurisdiction to enforce rights arising out of transactions in violation of the act. One of these was referred to the Senate Finance Committee on the same day it received the Sherman Bill. Indeed, the original Sherman Bill itself contained an analogous provision permitting any person damaged by a violation to recover back the full purchase price of any commodity advanced in price by an illegal combination."

Despite the fact that the Supreme Court in construing the Sherman Act had been squarely confronted with this omission, see e. g. McMullen v. Hoffman, 174 U.S. 639, 19 S.Ct. 839, 43 L.Ed. 1117 (1899); Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 46 L.Ed. 679 (1902), the Clayton Act's only addition to the antitrust enforcement measures, is its provision for private injunctive relief. 15 U.S.C. § 26.

"It is true that there are no words of express exclusion of the right of individuals to act in the enforcement of the statute, or of courts generally to entertain complaints on that subject. But it is evident that such exclusion must be implied for a twofold reason: First, because of the familiar doctrine that 'where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment of the remedy can be only that which the statute prescribes.' [citations omitted] Second, because of the destruction of the powers conferred by the statute, and the frustration of the remedies which it creates, which would obviously result from admitting the right of an individual, as a means of defense to a suit brought against him on his individual and otherwise inherently legal contract, to assert that the corporation or combination suing had no legal existence in contemplation of the anti-trust act." Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 174–175, 35 S.Ct. 398, 401, 59 L.Ed. 520 (1915).

The Robinson Patman Act likewise contains no provision for the defensive use sought by the alleged bankrupt, and the Supreme Court has clearly indicated that this legislative omission is not without significance.

"The Act prescribes sanctions, and it does not make uncollectibility of the purchase price one of them. Violation of the Act is made criminal and upon conviction a violator may be fined or imprisoned. 49 Stat. 1528, 15 U.S.C. §

13a. Any person who is injured in his business or property by reason of anything forbidden therein may sue and recover threefold the damages by him sustained and the costs of suit, including a reasonable attorney's fee. 38 Stat. 731, 15 U.S.C. § 15. This triple damage provision to redress private injury and the criminal proceedings to vindicate the public interest are the only sanctions provided by Congress." Bruce's Juices v. American Can Co., 330 U.S. 743, 750, 67 S.Ct. 1015, 1018, 91 L.Ed. 1219 (1947).

Insofar as the defense asserted by the alleged bankrupt exists at all, it constitutes an indirect sanction which the courts have added to those remedies provided by the legislation. The viability of the defense was, from the beginning, hindered by the fact that an undeserving purchaser who acquired goods by an illegal agreement and then sought to retain such without payment, might well be afforded a windfall. McMullen v. Hoffman, 174 U.S. 639, 669, 19 S.Ct. 839 (1899). Consequently, in only a narrowly defined class of cases, has the policy of refusing to enforce illegal contracts in order to encourage compliance with the antitrust laws prevailed over the policy of requiring satisfaction of all debts. Contracts merely collateral to an illegal conspiracy or combination will be enforced. Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431 (1902); Wilder Mfg. Co. v. Corn Products Co., 236 U.S. 165, 35 S.Ct. 398 (1915); Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597 (1925); see also Straight Side Basket Corp. v. Webster Basket Co., 82 F.2d 245 (2d Cir. 1936); John T. Stanley Co. v. Lagomarsino, 53 F.2d 112, 114 (S.D.N.Y.1931); Gasoline Products Co. v. Champlin Refining Co., 46 F.2d 511, 514–515 (D.Me.1931). Where a contract is found to be illegal in part only, and the illegal portion is severable, the remainder will be enforced. Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429 (1959); see also, Fox Film Corp. v. Muller, 192 Minn. 212, 255 N.W. 845 (1934), 260 N.W. 320 (1935).

Section 1 of the Sherman Act, 15 U.S. C. § 1, states "Every contract * * * in restraint of trade * * * is declared to be illegal. * * *" As the court reads the authorities, they hold this language to be directed to the contract between the two or more conspirators allegedly the wholesale liquor dealers in this case and not to encompass a contract for the sale of merchandise made by one or more of the alleged offenders or co-conspirators to a third person or persons.

In raising the antitrust defense, the alleged bankrupt in no way indicates that the contracts sought to be avoided are in themselves inherently illegal. The court finds no allegation that the alleged bankrupt was in any way restricted in its freedom to sell the liquor purchased from petitioners where, when, to whom, and at whatever price it might choose. Instead, the defense rests upon alleged illegal transactions engaged in by petitioners, or upon conspiracy agreements, or incipient monopolies involving the petitioners and their suppliers. The alleged bankrupt's claim that it is not obliged to pay for liquor received from petitioners is grounded on the effect that such conspiracies and combinations might have on competition generally, and in particular on the price of its purchases. The court is urged to accept the holding in Continental Wall Paper Co. v. Louis Voight and Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 (1909), as support for the proposition that this "unfair price" alone is sufficient to avoid the sales contracts in question. However, that case is one of the aforementioned "narrowly defined class of cases" and is clearly distinguishable on the facts since, as the court indicates at pp. 247–248, 29 S.Ct. 280, the sales and unpaid accounts relied on by the plaintiffs therein were alleged by the defendant to have been made pursuant to contractual relations which called for illegal resale price maintenance by the purchaser. In *Continental Wall Paper* the purchaser itself, the defendant in an action on an account receivable for merchandise sold and delivered, had been particeps to the illegal

conspiracy and had agreed in writing—albeit it claimed because it was forced so to do—to resale price maintenance. Nothing similar exists or appears in the case at bar. Far more apposite to the present case is Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431 (1902), cited but distinguished in *Continental Wall Paper*. In *Connolly* the Court stated:

" * * * If the contract between the plaintiff corporation and the other named corporations, persons, and companies, or the combination thereby formed, was illegal under the act of Congress, then all those, whether persons, corporations, or associations, directly connected therewith, became subject to the penalties prescribed by Congress. But the act does not declare illegal or void any sale made by such combination, or by its agents, of property it acquired or which came into its possession for the purpose of being sold,—such property not being at the time in the course of transportation from one state to another or to a foreign country. The buyer could not refuse to comply with his contract of purchase upon the ground that the seller was an illegal combination which might be restrained or suppressed in the mode prescribed by the act of Congress; for Congress did not declare that a combination illegally formed under the act of 1890 should not, in the conduct of its business, become the owner of property which it might sell to whomsoever wished to buy it. So that there is no necessary legal connection here between the sale of pipe to the defendants by the plaintiff corporation and the alleged arrangement made by it with other corporations, companies, and firms. The contracts under which the pipe in question was sold were, as already said, collateral to the arrangement for the combination referred to, and this is not an action to enforce the terms of such arrangement. That combination may have been illegal, and yet the sale to the defendants was valid." 184 U.S. at 551, 22 S.Ct. at 436.

The illegal dealings of petitioners if any may not now be separately raised by the alleged bankrupt in an effort to avoid its obligations under sales contracts clearly distinguishable therefrom. Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429 (1959); Bruce's Juices v. American Can Co., 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947); Wilder Mfg. v. Corn Products Co., 236 U.S. 165, 35 S.Ct. 398 (1915); Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300 (1925); Connolly v. Union Sewer Pipe Co., *supra*. To allow respondent to avoid its obligations to petitioners would violate the policy declared by the Court in *Kelly*, *supra*, 358 U.S. at 520–521, 79 S.Ct. at 432:

" * * * Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' Continental Wall Paper Co. v. Louis Voight & Sons Co., supra, 212 U.S. 227 at page 271, 29 S.Ct. at page 296 (dissenting opinion).

Citing many of the reasons discussed above, it previously has been determined in this District in a well reasoned opinion that claimed violations of federal antitrust laws by petitioning creditors may not be alleged and proved by way of defense to an involuntary petition in bankruptcy. In Re Bichel Optical Laboratories, Inc., 299 F.Supp. 545, 549 (D.C., 1969). The alleged bankrupt's attempts to distinguish or limit the effect of that holding are unpersuasive. The reason this court does not merely cite *Bichel Laboratories* and rest is that the above discussion in this opinion forms a frame of reference for the additional claim asserted by the alleged bankrupt of a violation of the Minnesota State antitrust laws, a claim not present in *Bichel Laboratories*.

It is urged that the claims of petitioners are invalid and unenforceable because of illegality under the Minnesota antitrust law. Minn.Stat. § 325.81. It is the opinion of this court that respondent is in no better or different position to assert illegality under the Minnesota statute than under the federal statutes discussed above.

There are surprisingly few cases applying the Minnesota antitrust law. See, Rahl, Toward a Worthwhile State Antitrust Policy, 39 Texas L.Rev. 753, 754 (1961). What authority there is indicates a policy of the Minnesota court to interpret the state statute in conformity with the federal statutes.

> "The Minnesota anti-trust law is framed along the same lines of the federal statute, although it is more diffuse. It may fairly be assumed however that the general purpose of all statutes of this kind is the same, and we may therefore properly look to the decisions made under federal and state statutes of a similar character for the principle by which to construe our own."

State v. Duluth Board of Trade, 107 Minn. 506, 517, 121 N.W. 395, 399 (1909); see also, Minnesota v. Northern Securities Co., 123 F. 692 (C.C.Minn. 1903), rev'd, 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870 (1904). "The principle of harmonious construction has become firmly affixed in Minnesota law." French, The Minnesota Antitrust Law, 50 Minn.L.Rev. 59, 65 (1965).

Like the federal statute, the Minnesota antitrust law makes no provision for the affirmative defense asserted by the alleged bankrupt. The scheme of state antitrust enforcement prescribed in § 325.81 includes criminal penalties, and forfeiture of corporate franchises which may be accomplished by private suit independent of any criminal conviction. Miller v. Minneapolis Underwriters

Ass'n, 226 Minn. 367, 374, 33 N.W.2d 48, 53 (1948). There is no provision for injunctions, although private injunctive relief has been afforded in order to avoid irreparable injury. Campbell v. Motion Picture Mach. Operators' Union of Minneapolis, Local 219, Int'l Alliance of Theatrical Stage Employees of U. S. and Canada, 151 Minn. 220, 186 N.W. 781, 27 A.L.R. 631 (1922). Nowhere does the state legislature authorize defendants in civil actions to assert violations of the Minnesota statute as a defense, nor does the statute specifically declare illegal such contracts as are involved in the case at bar. The significance of this omission is to be considered in the light of provisions elsewhere in Minnesota's business regulation statutes in which the legislature expressly declares proscribed transactions void or unenforceable. See e. g. Minn.Stat. § 541.21 (gambling transaction), Minn.Stat. § 334.03 (usury). The legislature might perhaps have so provided in antitrust tainted contracts, but it did not. From theses statutes it would appear that when the legislature intends contract defendants such as the alleged bankrupt to join in its enforcement policies, it has made express provision to that effect. The absence of such a provision in its antitrust law weighs heavily against such an intent.

There appear to be no Minnesota cases in which a violation of § 325.81 has been allowed as a defense to a contract.[3] The illegality of the contracts which the alleged bankrupt seeks to avoid is based solely on the claimed unfair price charged by petitioners. Such, in the frame of reference of this case, are no more inherently illegal under the Minnesota antitrust statute than under similar federal law.

A separate order has been entered adjudicating Otto's Liquor, Inc. a bankrupt and referring the case to the Referee in Bankruptcy for further proceedings.

---

3. The defense was presented to the Minnesota court in a 1961 case, but the issue was avoided on jurisdictional grounds.

A.M.F. Pinspotters, Inc. v. Harkins Bowling, Inc., 260 Minn. 499, 110 N.W.2d 348, 354 (1961).