## York Building Products Co. Inc.
## v. Delta Carbonate Inc.

*Lillian M. Morgan,* for plaintiffs.
*Christopher W. Mattson* and *Thomas J. Lovelass,* for defendants.

UHLER, *J.,* April 29, 1992—This case is before the court on plaintiff, York Building Products Co. Inc.'s preliminary objection to defendant Delta Carbonate's new matter and counterclaim. More specifically, plaintiff requests that we dismiss defendant's federal antitrust

counterclaim and strike defendant's federal antitrust defense.

The facts of this case indicate that plaintiff initiated this action by filing a complaint on October 2, 1991. Plaintiff seeks enforcement of a restrictive covenant in a 1988 "sale, lease, occupancy and rock purchase agreement," between plaintiff and Bestone Inc. The obligations of Bestone Inc. were assigned to defendant, Delta Carbonate Inc., its officers and directors, in 1989.

Pursuant to the agreement, York Building purchased from Bestone two asphalt manufacturing plants located along Roosevelt Avenue in York. The sale, lease and rock purchase agreement also provided for the lease, by Bestone, of its rock crushing plant to York Building, and granted York Building the right of occupancy in common with Bestone to operate the asphalt and stone crushing plants and to service certain York Building customers who purchase commercial limestone products produced at the facilities. Pursuant to that same agreement, York Building agreed that during the 15-year term of the agreement, they would crush at the leased crushing plant, and deliver to Bestone, a minimum quantity of limestone, which was suitable for use as a filler in the building industry. Also under the agreement, York Building agreed, for a period of 15 years, to purchase and remove from Bestone's limestone quarry a minimum stated quantity of limestone which was to be processed and resold as commercial limestone to customers of York Building.

The sale, lease, occupancy and rock purchase agreement also contained a restrictive covenant which basically prohibits Bestone (Delta Carbonate) from en-

gaging in business activity with commercial users serviced by the plaintiff or from otherwise competing with the plaintiff in the sale of commercial limestone within a 50-mile radius of York County. The actual language of the covenant reads as follows:

"A. [Bestone], its officers, directors and Frederick L. Barton and R. Clayton Emory covenant and agree that during the term of this agreement or any renewal thereof they will not, within a 50-mile radius of York County, Pennsylvania, directly or indirectly carry on, conduct, engage in or have any interest in any entity engaged in the business of production of bituminous paving materials or the sale or use of limestone products excluding, however, pelletized limestone, for the commercial users serviced by [York Building] or otherwise compete with [York Building] in such business."

The sale, lease, occupancy and rock purchase agreement also provided for the issuance of an injunction in the event of a breach by Bestone of the restrictive covenant:

"The parties acknowledge that in the event of a breach of the foregoing provisions of this agreement, the resultant damage, harm and loss which would be occasioned thereby is irreparable and no adequate remedy at law exists therefor. Accordingly, in the event of a breach of said provisions of this agreement or a threatened breach thereof, it is agreed that an injunction or restraining order or other appropriate relief or remedy may be ordered and enforced by a court having jurisdiction in an action in equity."

As alleged in the pleadings, in February 1989, defendant Delta Carbonate purchased the assets of Bestone

located at the Roosevelt Avenue facility. Delta Carbonate also became the assignee of Bestone's rights and obligations under the sale lease occupancy and rock purchase agreement. Plaintiff complains that as assignee, Delta Carbonate is obligated to comply with the terms of the above-mentioned restrictive covenant and is, therefore, prohibited from directly or indirectly carrying on, conducting, engaging in or having any interest in any entity engaged in the business of selling or using limestone products within a 50-mile radius of York County.

Defendant Penroc, a New Jersey corporation, has been brought into this action through its close association with Delta Carbonate. Plaintiff claims that Delta Carbonate's officers and administrative personnel are active in the management of Penroc. As such, it has been asserted that Penroc may be soliciting business which is prohibited under the restrictive covenant in the sale, lease, occupancy and rock purchase agreement. Thus, plaintiff argues that both Delta Carbonate and Penroc have engaged in unfair competition with York Building without a privilege to do so. Plaintiff claims that defendants' unfair competition was intentional, wanton, willful, malicious and outrageous, and as such, requests injunctive relief.

In response, defendant Delta Carbonate filed a new matter and counterclaim on November 6, 1991. Defendant's new matter asserts that plaintiff's complaint fails to state a cause of action under any court. Defendant's new matter also asserts that the restrictive covenant in question is unlawful and unenforceable as against all defendants in that it violates federal antitrust laws. Defendant's counter-claim, in essence, asserts

that plaintiff's attempt to enforce the restrictive covenant against the defendants is part of plaintiff's plan to maintain its unlawful monopoly position in the York County market by unlawfully excluding competition. Defendants assert that plaintiff's actions are in violation of section 2 of the Sherman Act, 15 U.S.C. §2.

There are two issues currently before this court: first, whether federal antitrust claims or counterclaims are within the exclusive jurisdiction of the federal courts; and second, whether a federal antitrust defense may be asserted by a defendant in a state court action in the form of new matter.

## EXCLUSIVE JURISDICTION

*Are federal antitrust claims or counterclaims within the exclusive jurisdiction of the federal courts?*

The general rule is that the injunctive remedies provided by the Sherman petition against threatened or continuing violations of the Act are cognizable in federal court exclusively. *Hand v. Kansas City S.R. Co.,* 55 F.2d 712 (D.C. N.Y. 1931). As such, a state court has no jurisdiction to grant relief provided by either the Sherman Act or the Clayton Act. *Id.*; See also, 15 U.S.C. §4 (1985). In *Westinghouse Electric and Manufacturing Co. v. MacGregor,* 350 Pa. 333, 38 A.2d 244 (1944), the Pennsylvania Supreme Court held that a licensee may not counterclaim for damages resulting from plaintiff's alleged violations of the Sherman Anti-Trust Act. *Id.* at 343-344, 38 A.2d at 250.

Defendants cite the case of *Mitsubishi v. Soler Chrysler-Plymouth,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), in support of bringing antitrust

counterclaims in state court. We do not find the *Mitsubishi* case persuasive in this instance. While we agree with defendants that the trend may be to abolish federal court's exclusive jurisdiction over such claims, we are not willing today to create new law. Thus, acknowledging the long history in Pennsylvania with respect to this issue, we find that federal antitrust claims and counterclaims are within the exclusive jurisdiction of the federal courts. As such, we are bound by precedent to dismiss defendant's counterclaim pertaining to plaintiff's alleged violation of section 2 of the Sherman Act.

## APPROPRIATE DEFENSES

*Are violations of federal antitrust laws appropriate defenses to a state court cause of action?*

In *Bruce's Juices v. American Can Co.,* 155 Fl. 877, 22 So.2d 461 (1947), *affirmed,* 330 U.S. 743, 67 S.Ct. 1015, 91 L.Ed 1219 (1947), the Supreme Court found that, "anyone sued upon a contract may set up as a defense that it is in violation of the Sherman Act." *Id.* In *Bruce's Juices, supra.*, the Supreme Court found that, "[t]he same general principle was also applied in *Pratt v. Paris Gaslight and Coke Co.,* 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1897), wherein it was held that jurisdiction of a state court was not affected by an issue of the invalidity of a patent as an incident to a defense, although that court could have exercised no jurisdiction had the matter been presented to support a recovery." *Id.*

This court also notes *Revlon Inc. v. Capitol Beauty Supply Co.,* 79 Dauphin L.J. 88 (1962), which quotes

an opinion of Judge Learned Hand of the 2nd Circuit. In *Lyons v. Westinghouse Electric Corp.,* 222 F.2d 184 (1955), Judge Learned Hand, quoting from *A.B. Small Co. v. Lamborn & Co.,* 267 U.S. 248, 252, 455 S.Ct 295, 69 L.Ed. 597, 600 (1924), stated "it is only where the invalidity is inherent in the contract that the act may be interposed as a defense." In *Lyons,* Judge Learned Hand further stated:

"Finally, in *Bruce's Juices v. American Can Co.,* 330 U.S. 743, 755, 67 S.Ct. 1015, 1020, 91 L.Ed. 1219, 1227, in overruling the buyer's defense to the seller's action to recover for goods sold at prices illegally discriminatory under the Robinson-Pattman Act, the court said of the Anti-Trust Act 'that where a suit is based upon an agreement ... which has as its object and effect accomplishment of illegal ends which would be consummated by the judgment sought, the court will entertain the defense that the contract in suit is illegal under the express provision of that statute.... But when the contract sued upon is not intrinsically illegal, the court has refused to allow property to be obtained under a contract of sale without enforcing the duty to pay for it because of violations of the Sherman Act not inhering in the particular contract in suit....'

"The upshot of these decisions, if we apprehend them right, is that, if the conspiracy inheres in the contract in suit by a conspirator against a non-conspirator, the conspiracy is a defense, but not otherwise. It is impossible to import any exact boundaries into that word— and we shall not attempt to do so—but whatever may be its limits, it appears to us that, when a conspirator seeks to enforce a contract between himself and one of his 'agents,' whom he has employed to carry out

the purposes of the illegal enterprise, the conspiracy must 'inhere' in the contract. The 'agent' is a cooperator with him in his illegal venture, unlike the buyer of the goods monopolized who has not joined in the undertaking and is therefore not an abettor. The fact that the agent's cooperation is unwilling is irrelevant, although a victim of the wrong, he becomes an active promoter of it. Therefore, we think that the state court had jurisdiction to pass upon whether the defense, as alleged was proved."

Thus, absent further information before this court as to the stated contract's inherent illegality, we find that an affirmative defense may be asserted relating to the Sherman violation. This finding is without prejudice to a subsequent determination on this issue on a motion for summary judgment and/or motion to strike at time of trial. We acknowledge defendant's right to aver a violation of the federal antitrust laws as a defense, pending the subsequent determination which this court may be called upon to resolve.

An appropriate order shall be entered.

## ORDER

And now, April 29, 1992, the following is ordered by the court.

(1) Plaintiff's preliminary objection to defendant's federal antitrust counterclaim is granted.

(2) Plaintiff's preliminary objection to defendant's federal antitrust affirmative defense is denied, without prejudice to a subsequent determination of this issue.